Opinion issued September 24, 2009









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-01092-CV






IN THE MATTER OF D.J.C., Appellant







On Appeal from the County Court at Law No. 1

Galveston County, Texas

Trial Court Cause No. 06JV0221






OPINION


 A jury found it true that juvenile appellant D.J.C. engaged in delinquent
conduct by committing aggravated sexual assault. The trial court signed a disposition
order sentencing appellant to probation for one month in the custody of his
grandmother and seven hours of community supervision. In two points of error,
appellant argues (1) that the trial court erred in denying his motion to suppress
because his statement to police was obtained in violation of Texas Family Code
statutes governing juvenile statements and (2) that the trial court erred in restricting
his voir dire questions, thereby violating his constitutional rights. 

 We conclude that the police failed to follow certain Family Code provisions
required when obtaining a statement from a minor and that admission of appellant's
statements was not harmless error. We therefore reverse the judgment of the trial
court and remand for a new trial. 

Background

 On February 14, 2006, appellant D.J.C., a sixteen-year-old male, and the
complainant, M.I.F., a thirteen-year-old female, had a sexual encounter in the
complainant's home in Galveston, Texas. On March 31, 2006, the complainant told
a case worker with Child Protective Services that she had had a sexual encounter with
appellant. Galveston Police Department ("GPD") Officer C. Garcia was assigned to
investigate M.I.F.'s complaint. On June 21, 2006, Officer Garcia went to appellant's
home and talked to appellant and his grandmother. Officer Garcia told them that
appellant was a suspect in a crime and the focus of an investigation. Officer Garcia
requested that appellant's grandmother bring him to the GPD station and that "it
would be best for him to cooperate." Officer Garcia left appellant's home.

 In response to Officer Garcia's request, appellant and his grandmother later
went to the police station. Officer Garcia led appellant to an interview room on the
second floor of the police station. Officer Garcia testified that he knew very little
about juvenile detention and did not know whether the interview room met the
requirements of a designated juvenile detention center. He also testified that the
police department had a designated juvenile section "but it wasn't equipped with the
video equipment at the time," and so he did not use it. Therefore, Officer Garcia took
appellant's statement in the interview room used for questioning both adult and
juvenile subjects. Appellant's grandmother, who was his legal guardian, asked to be
present with appellant in the interview room, but police denied her request. Officer
Garcia turned on a video camera and left the interview room. A Galveston municipal
court judge then entered the interview room and read appellant his rights, including
his right to counsel, right to remain silent during the interview, and right to terminate
the interview at any time. The magistrate also warned appellant that "you don't have
to make this statement to anyone. And anything you say can be used against you." 
However, he did not warn appellant his statement could be used "in evidence" against
him. Appellant's grandmother was not present when the magistrate read him these
rights.

 After the judge read appellant his rights, Officer Garcia returned to the
interview room. Officer Garcia told appellant he was a suspect in an offense of
having sex with a thirteen-year-old child. After Officer Garcia questioned appellant
for fifteen to twenty minutes, appellant confessed to having sex with the complainant. 
Garcia arrested him immediately after the interview.

 At trial, appellant moved to suppress his confession. The trial court excused
the jury and convened a hearing on appellant's motion to suppress. At the hearing,
Officer Garcia testified that he led appellant to the interview room "used routinely to
interview all criminal suspects." He testified that he was armed and that the door was
locked. He testified that he did not know what constituted a juvenile processing
office and that he did not "routinely investigate juvenile crimes." He testified that his
supervisor "advised me [the interview room] was mandated as a juvenile interview
room." However, he also testified that the room was used for the interrogation of
both adult and juvenile suspects and that he used that room because there was no
videotape in the designated juvenile interview room at that time. The State played the
video recording of Officer Garcia's interview with appellant. At the end of the
hearing, the trial court ruled that appellant was not in custody at the time of his
confession and denied appellant's motion to suppress.

 Appellant testified that the judge told him at least twice that he could leave the
interview room at any time. In addition, appellant testified that he told Officer Garcia
that he was not afraid to leave the interview room at any time. Appellant also
testified that he did not fully understand the warnings the judge gave him prior to his
interview. He stated that he and his grandmother drove to the police station
"[b]ecause the officer came to our house and told us that I need to give a statement." 
He further testified, in relevant part:

[Counsel]: Okay. And when you were in the room when the
Judge was telling you those warnings, did you feel
like you could just get up and walk out the door?


[Appellant]: Not really.


[Counsel]: Did you understand that when he told you that the
statement could be used against you, did you
understand that that meant in court?


[Appellant]: No.


[Counsel]: Did you understand that that meant they were
charging you with a crime as a result of the
statement?


[Appellant]: No, ma'am.


[Counsel]: Did you even know that this was a crime at this
point?


[Appellant]: If I knew I was going to get in trouble for what I
said, I wouldn't have went.


[Counsel]: You didn't understand that you were waiving your
right, did you?


[Appellant]: No, ma'am.

 The State also introduced testimony from the complainant. The complainant
testified that she did not remember whether she had sex on February 14, 2006 with
appellant. She testified that she "[didn't] know if it was 2005 or 2006." She also
testified that she was thirteen years old and appellant was sixteen years old on
February 14, 2006. She testified that she and appellant had sex at her house. She also
testified that she told investigators that she and appellant had sex at his house but she
did not know the address. She could not remember whether she or appellant brought
a condom when they had sex. She also testified that she told investigators that she
brought a condom for appellant when they had sex.

 The jury found true that appellant had engaged in delinquent conduct by
committing aggravated sexual assault against the complainant. On November 1,
2007, the trial court signed a disposition order placing appellant on one month's
probation and seven hours of community service work.

Motion to Suppress

 In his first point of error, appellant argues that the trial court erred in denying
his motion to suppress his video-recorded confession because the confession was
made under circumstances that violated several Texas Family Code sections
governing juvenile confessions. 

 A. Standard of Review of Motion to Suppress

 When a defendant is a juvenile at the time of his arrest, the provisions of the
Texas Family Code control issues involving his substantive rights. Roquemore v.
State, 60 S.W.3d 862, 866 (Tex. Crim. App. 2001). Therefore, we determine the
admissibility of a statement of a juvenile in delinquency proceedings in accordance
with section 54.03(e) of the Family Code, which provides that "[a]n extrajudicial
statement which was obtained without fulfilling the requirements of this title or of the
Constitution of this state or of the United States, may not be used in an adjudication
hearing." Tex. Fam. Code. Ann. § 54.03(e) (Vernon 2008).

 The Texas Supreme Court has classified juvenile adjudication proceedings as
"quasi criminal" because, although proceedings under the Family Code are generally
governed by the Texas Rules of Civil Procedure, an exception is made "for the burden
of proof to be borne by the state in adjudicating a child to be delinquent or in need of
supervision under Section 54.03(f) [governing judicial determinations at adjudication
hearings] or otherwise when in conflict with a provision of this title" and because,
"[e]xcept as otherwise provided by this title, the Texas Rules of Evidence apply to
criminal cases and Articles 33.03 and 37.07 and Chapter 38, Code of Criminal
procedure, apply in a judicial proceeding under this title." Tex. Fam. Code Ann. 
§§ 51.17(a), (c) (Vernon 2008); In re B.L.D. & B.R.D., 113 S.W.3d 340, 351 (Tex.
2003) (citing Tex. Fam. Code Ann. § 51.17(c)); In re U.G., 128 S.W.3d 797,
799-800 (Tex. App.--Corpus Christi 2004, pet. denied). Thus, we review a trial
court's ruling on a motion to suppress the statement of a juvenile in an adjudication
proceeding under the same abuse of discretion standard as a motion to suppress the
statement of an adult in a criminal proceeding. See Balentine v. State, 71 S.W.3d 763,
768 (Tex. Crim. App. 2002); In re J.A.B., 281 S.W.3d 62, 65 (Tex. App.--El Paso
2008, no pet.).

 When reviewing the trial court's ruling on a motion to suppress, we view the
evidence in the light most favorable to the trial court's ruling. State v. Iduarte, 268
S.W.3d 544, 548 (Tex. Crim. App. 2008); In re J.A.B., 281 S.W.3d at 65. When the
trial court makes explicit fact findings, we determine whether the evidence, when
viewed in the light most favorable to the trial court's ruling, supports those findings. 
Iduarte, 268 S.W.3d at 548; In re J.A.B., 281 S.W.3d at 65. We review the trial
court's legal rulings de novo. Iduarte, 268 S.W.3d at 548; In re J.A.B., 281 S.W.3d
at 65. We uphold the trial court's ruling if it is supported by the record and correct
under any theory of law applicable to the case. Iduarte, 268 S.W.3d at 548; In re
J.A.B., 281 S.W.3d at 65. We afford a great deal of deference to a trial judge's
rulings on questions of historical fact, and also on rulings that both apply the law to
facts and turn on an evaluation of credibility and demeanor. Iduarte, 268 S.W.3d at
548; In re J.A.B., 281 S.W.3d at 65. Nonetheless, mixed questions of law and fact
may be reviewed de novo when they do not depend on credibility or disputed facts. 
Iduarte, 268 S.W.3d at 548; In re J.A.B., 281 S.W.3d at 65. Likewise, mixed
questions of law and fact that are not based on evaluations of credibility or demeanor,
such as the question of whether an interrogation is custodial, are reviewed de novo. 
In re J.A.B., 281 S.W.3d at 65.

 B. Custodial Interrogation of a Juvenile

 Appellant contends that his interrogation by Officer Garcia constituted
custodial interrogation in violation of the United States Constitution and Texas
Family Code provisions governing the admissibility of statements made by juveniles
and that his confession should have been suppressed under the Family Code. See
Tex. Fam. Code Ann. § 51.095 (Vernon 2008) (governing "Admissibility of a
Statement of a Child"); § 54.03(e). The State argues that appellant was not in custody
when his confession was made, and therefore, the Texas Family Code sections
governing juvenile confessions do not apply and the statement was admissible under
article 38.23 of the Texas Code of Criminal Procedure. (1)
 We first determine,
therefore, whether appellant was in custody when he made his statement to Officer
Garcia. 

 Custodial interrogation is questioning initiated by law enforcement after a
person has been taken into custody or otherwise deprived of his freedom in any
significant way. See Stansbury v. California, 511 U.S. 318, 322, 114 S. Ct. 1526,
1528-30 (1994); Cannon v. State, 691 S.W.2d 664, 671 (Tex Crim. App. 1985);
Martinez v. State, 131 S.W.3d 22, 32 (Tex. App.--San Antonio 2003, no pet.). "A
custodial interrogation occurs when a defendant is in custody and is exposed 'to any
words or actions on the part of the police . . . that [the police] should know are
reasonably likely to elicit an incriminating response.'" Roquemore v. State, 60
S.W.3d at 868 (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S. Ct. 1682,
1689-90 (1980)). A child is in custody if, under the objective circumstances, a
reasonable child of the same age would believe his freedom of movement was
significantly restricted. In re U.G., 128 S.W.3d at 799; Jeffley v State, 38 S.W.3d
847, 855 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd).

 A two-step analysis is employed in a juvenile delinquency proceeding to
determine whether an individual is in custody. In re M.R.R., 2 S.W.3d 319, 323 (Tex.
App.--San Antonio 1999, no pet.). First, the court examines all the circumstances
surrounding the interrogation to determine whether there was a formal arrest or
restraint of freedom of movement to the degree associated with a formal arrest. 
Stansbury, 511 U.S. at 322, 114 S. Ct. at 1528-29; In re M.R.R., 2 S.W.3d at 323. 
This initial determination focuses on the objective circumstances of the interrogation,
not on the subjective views harbored by either the interrogating officers or the person
being questioned. Stansbury, 511 U.S. at 322, 114 S. Ct. at 1529; In re M.R.R., 2
S.W.3d at 323. Second, the court considers whether, in light of the given
circumstances, a reasonable person would have felt he or she was at liberty to
terminate the interrogation and leave. Thompson v. Keohane, 516 U.S. 99, 112, 116
S. Ct. 457, 465 (1995); In re M.R.R., 2 S.W.3d at 323. Factors relevant to a
determination of custody include (1) probable cause to arrest; (2) focus of the
investigation; (3) subjective intent of the police; and (4) subjective belief of the
defendant. Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); In re
J.A.B., 281 S.W. 3d at 65; In re M.R.R., 2 S.W.3d at 323. Because the determination
of custody is based on entirely objective circumstances, whether the law enforcement
officials had the subjective intent to arrest is irrelevant unless that intent is somehow
communicated to the suspect. Stansbury, 511 U.S. at 323,114 S. Ct. at 1529;
Dowthitt, 931 S.W.2d at 254; Jeffley, 38 S.W.3d at 855; In re M.R.R., 2 S.W.3d at
323.

 The following situations generally constitute custody: (1) when the suspect is
physically deprived of his freedom of action in any significant way; (2) when a law
enforcement officer tells the suspect that he cannot leave; (3) when law enforcement
officers create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted; or (4) when there is probable
cause to arrest and law enforcement officers do not tell the suspect that he is free to
leave. Dowthitt, 931 S.W.2d at 255; Jeffley, 38 S.W.3d at 855. 

 Being the focus of an investigation does not amount to being in custody. Meek
v. State, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990); Martinez, 131 S.W.3d at 32.
Station house questioning does not, in and of itself, constitute custody. Dowthitt, 931
S.W.2d at 255; Jeffley, 38 S.W.3d at 855. "Words or actions by the police that
normally attend an arrest and custody, such as informing a defendant of his Miranda
rights, do not constitute a custodial interrogation." Roquemore, 60 S.W.3d at 868.
When the circumstances show that the individual acts upon the invitation or request
of the police and there are no threats, express or implied, that he will be forcibly
taken, then that person is not in custody at that time. Dancy v. State, 728 S.W.2d 772,
778-79 (Tex. Crim. App. 1987); Martinez, 131 S.W.3d at 32. 

 "The mere fact that an interrogation begins as non-custodial, however, does not
prevent it from later becoming custodial; police conduct during the encounter may
cause a consensual inquiry to escalate into custodial interrogation." Dowthitt, 931
S.W.2d at 255; Jeffley, 38 S.W.3d at 856. A juvenile may be in custody when the
juvenile is interrogated alone by an armed police officer in an enclosed office. See
In re D.A.R., 73 S.W.3d 505, 511-12 (Tex. App.--El Paso 2002, no pet.). 

 Here, appellant came to the police station with his grandmother after Officer
Garcia came to his home to request that he come to the police station. Officer Garcia
testified that he told appellant's grandmother that appellant was a suspect in a crime
and the focus of a police investigation. Officer Garcia also testified that he asked
appellant "for his cooperation, if he would give a voluntary statement as to the
allegations that were made against him." He also testified that he told appellant that
"it would be best for him to cooperate" but that he made no representations as to why
it would be best for appellant to cooperate. 

 Officer Garcia, while wearing his firearm, took appellant to an interview room
used in interrogations of both adult and juvenile subjects. He denied appellant's
grandmother's request to remain in the room during his interrogation of appellant. 
Officer Garcia then left the room and had a magistrate come in to issue appellant
warnings about appellant's right to remain silent, right to counsel, and right to
terminate the interview at any time in the absence of appellant's grandmother, who
was appellant's legal guardian and an adult. After appellant received the magistrate's
warnings, Officer Garcia returned to the room, which he testified was locked, and
asked appellant about the aggravated sexual assault. Appellant was thus alone in a
locked room used for the interrogation of adult, as well as juvenile, criminal
defendants with an armed police officer at the time he made the statement to Officer
Garcia. Appellant was arrested immediately after he gave his statement. 

 We conclude that by excluding appellant's grandmother from the interview
room, despite her express request to be present, having the magistrate judge read
appellant his rights, then returning to the interview room and locking it, Officer
Garcia signaled a change in the nature of the interview. See Jeffley, 38 S.W.3d at 856;
Dowthitt, 931 S.W.2d at 255 (stating that "mere fact that an interrogation begins as
non-custodial does not prevent custody from arising later; police conduct during the
encounter may cause a consensual inquiry to escalate into custodial interrogation").
Under the first step of the custody analysis, we hold that there was restraint of
freedom of movement to the degree associated with a formal arrest. See Stansbury,
511 U.S. at 322, 114 S. Ct. at 1528-29; see also In re M.R.R., 2 S.W.3d at 323; see
also In re D.A.R., 73 S.W.3d at 511. 

 We also conclude that, in light of the given circumstances, a juvenile of
appellant's age could reasonably have felt he was not at liberty to terminate the
interview and leave. See Thompson, 516 U.S. at 112, 116 S.Ct. 457; In re M.R.R., 2
S.W.3d at 323. Appellant testified that the magistrate told him he could leave the
interview room at any time. He also testified that he told Officer Garcia that he was
unafraid to leave the interview room at any time. But he also testified that he did "not
really" feel that he could leave. Furthermore, because the door was locked, appellant
was not objectively "free" to leave. Appellant further testified that he did not
understand that he could be charged with a crime as a result of his statement and that
his statement could be used "in evidence" against him. See Tex. Fam. Code Ann.
§ 51.095(a)(1)(A) (Vernon 2008) (setting out warnings that must be given for
admissibility of custodial statement of child, including statement that "the child may
remain silent and not make any statement at all and that any statement that the child
may be used in evidence against the child"). In light of all the circumstances, we hold
that a reasonable child would not have felt he or she was at liberty to terminate the
interrogation and leave. See Keohane, 516 U.S. at 112, 116 S. Ct. at 465; Dowthitt,
931 S.W.2d at 255; Jeffley, 38 S.W.3d at 855; In re M.R.R., 2 S.W.3d at 323; cf.
Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2150 (2004) (juvenile
defendant's being allowed to leave at end of "non-Mirandized interview" was fact
that "weigh[ed] against a finding that [defendant] was in custody"). 

 We hold that appellant was in custody at the time he made his statement and,
therefore, the provisions in the Family Code governing the admissibility of the
custodial statement of a juvenile apply.

 C. Family Code Restrictions on Custodial Interrogation of a Juvenile

 Appellant contends that his custodial statement was inadmissible because it
failed to fulfill several requirements of the Family Code. See Tex. Fam. Code Ann.
§ 54.03(e). Specifically, appellant contends that (1) his statement was not taken in
a designated juvenile processing center, as required by sections 52.02(a) and
52.025(a) of the Family Code; (2) his grandmother was excluded from the interview
room despite her request to be present, in violation of section 52.025(c) of the Code;
and (3) his video-recorded statement did not comply with section 52.025(b)(5) of the
Code, which requires that an electronically recorded statement of a juvenile received
in a designated juvenile processing center comply with Family Code sections
51.095(a)(1), (2), (3) or (5), because it did not comply with sections 51.095(a)(1)(A)
and (a) (5), governing the warnings to be given a juvenile prior to the taking of his
statement.

1. Violation of Family Code Sections 52.02(a) and 52.025(a) by Failure to Take
Statement in a Designated Juvenile Processing Center 


 Appellant first contends that his statement was not taken in a designated
juvenile processing center, as required by sections 52.02(a) and 52.025(a) of the
Family Code.

 a. Procedures for taking a child into custody under Family Code section
52.02(a)


 Section 52.02(a) of the Texas Family Code governs procedures that must be
followed when a juvenile is taken into custody. In re D.Z., 869 S.W.2d 561, 564
(Tex. App.--Corpus Christi 1994, writ denied). The Court of Criminal Appeals has
"established a policy of strict compliance with the Family Code, especially section
52.02(a)." Roquemore, 60 S.W.3d at 868; Baptist Vie Le v. State, 993 S.W.2d 650,
655-56 (Tex. Crim. App. 1999); Comer v. State, 776 S.W.2d 191, 196-97 (Tex.
Crim. App. 1991).


 Section 52.02(a) provides in relevant part:

 (a) [A] person taking a child into custody, without unnecessary delay
and without first taking the child to any place other than a
juvenile processing office designated under Section 52.025, shall
do one of the following: 


 (1) release the child to a parent, guardian, custodian of the
child, or other responsible adult upon that person's promise
to bring the child before the juvenile court as requested by
the court.


 (2) bring the child before the office or official designated by
the juvenile board if there is probable cause to believe that
the child engaged in delinquent conduct, conduct
indicating a need for supervision, or conduct that violates
a condition of probation imposed by the juvenile court;


 (3) bring the child to a detention facility designated by the
juvenile board; 


 (4) bring the child to a secure detention facility as provided by
Section 51.12(j); (2)


 (5) bring the child to a medical facility if the child is believed
to suffer from a serious physical condition or illness that
requires prompt treatment;


 (6) dispose of the case under Section 52.03 (3);


See Tex. Fam. Code. Ann. § 52.02(a) (emphasis added); Baptist Vie Le, 993 S.W.2d
at 652-53. 


 Under section 52.02(a), an officer who has taken a child into custody may only
bring the child to a "designated juvenile processing office under section 52.025," or,
alternatively: (1) release the child to a parent; (2) bring the child before the office or
official designated by the juvenile court; (3) bring him to a detention facility
designated by the juvenile board; (4) bring him to a juvenile detention facility; (5)
bring him to a medical facility; or (6) dispose of the case. Baptist Vie Le, 993 S.W.2d
at 652-53. When a law enforcement officer deems it necessary to take a juvenile into
custody, the Family Code requires that without unnecessary delay and without first
taking him anywhere else except a juvenile processing office, the officer must bring
the juvenile before the office designated by the juvenile court or bring him to a
detention facility designated by the juvenile court. In re D.Z., 869 S.W.2d at 564;
Comer, 776 S.W.2d at 194. Once the officer has found cause initially to take the
juvenile into custody and makes a decision to refer him to the intake officer or other
designated authority, he relinquishes ultimate control over the investigative function
of the case. See Baptist Vie Le. 993 S.W.2d at 654; In re D.Z., 869 S.W.2d at 564. 
Thus, with each of the options in section 52.02(a), except the option of taking the
child to a designated juvenile processing office, the officer's involvement in the case
ceases. Baptist Vie Le, 993 S.W.2d at 654; see In re D.Z., 869 S.W.2d at 564. 

 When police officers fail to comply with the requirements of Family Code
section 52.02(a), 52.12, and 52.025, governing the taking of a child into custody and
the taking of the statement of a child in a juvenile processing office, a statement
obtained from a juvenile by the investigating officer may violate his rights as a
juvenile under the Family Code and thus be inadmissible at trial. See Tex. Fam.
Code Ann. § 54.03(e); In re U.G., 128 S.W.3d at 799 (holding juvenile's statement
inadmissible when, after being placed in custody, police took juvenile to police
station and held juvenile in area where adult suspects were held instead of taking
juvenile "to a juvenile processing office or any of the places listed as an alternative"
in section 52.02 and placing juvenile in specifically designated office for juveniles). 
This is so even if the statement would otherwise be admissible as a custodial
statement of a child under section 51.095 of the Family Code, governing the
admissibility of a statement of a child. See Tex. Fam. Code Ann. § 51.095;
Roquemore, 60 S.W.3d at 868; Comer, 776 S.W.2d at 195-96; Marsh v. State, 140
S.W.3d 901, 907 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd). 

 Here, Officer Garcia did not exercise any of the options provided by Family
Code subsections 52.02(a)(1)-(6) that would have terminated his involvement in
appellant's case. Therefore, he was authorized by section 52.02(a) only to take
appellant to a "designated juvenile processing office" in compliance with Family
Code section 52.025. See Tex. Fam. Code. Ann. § 52.02(a); Baptist Vie Le, 993
S.W.2d at 654. 


 b. Procedures for taking the statement of a juvenile in a designated
juvenile processing office under Family Code section 52.025(a)


 Section 52.025, governing juvenile processing offices, provides, in relevant
part:

 (a) The juvenile court may designate an office or a room, which may
be located in a police facility or sheriff's offices, as the juvenile
processing office for the temporary detention of a child taken into
custody under Section 52.01 (4). The office may not be a cell or
holding facility used for detentions other than detentions under
this section. The juvenile board by written order may prescribe
the conditions of the designation and limit the activities that may
occur in the office during the temporary detention. 


 (b) A child may be detained in a juvenile processing office only for:

 

 (1) the return of the child to the custody of a [parent or
guardian] . . . ;


 (2) the completion of essential forms and records required by
the juvenile court or this title;

 (3) the photographing and fingerprinting of the child . . . ;

 

 (4) the issuance of warnings to the child as required or
permitted by this title; or

 

 (5) the receipt of a statement by the child under Section
51.095(a)(1), (2), (3), or (5).


 () A child may not be left unattended in a juvenile processing office
and is entitled to be accompanied by the child's parent, guardian
or by the child's attorney.

 

 (d) A child may not be detained in a juvenile processing office for
longer than six hours. 


Tex. Fam. Code. Ann. § 52.025 (emphasis added); see Baptist Vie Le, 993 S.W.2d
at 653. 

 A "juvenile processing office" is "little more that a temporary stop for
completing necessary paperwork pursuant to the arrest." Baptist Vie Le, 993 S.W.2d
at 654. Under the plain language of section 52.025(b), it may be used only for (1) the
return of the child to a parent or guardian; (2) the completion of forms or records; (3)
photographing and fingerprinting if the child; (4) the issuance of warnings; and (5)
the receipt of a statement in compliance with section 51.095(a) (1), (2), (3), or (5) of
the Family Code. Tex. Fam. Code. Ann. § 52.025 (b).

 Moreover, under the plain language of section 52.025(a), while a "designated
juvenile processing office" may be a room located in a police station, it may not be
a room that is "used for detentions other than detentions under this section." Tex.
Fam. Code. Ann. § 52.025(a); Baptist Vie Le, 993 S.W.2d at 653-54 (taking juvenile
arrested for murder to homicide division of police department violated Family Code
requirements for handling child taken into custody). If, after taking a juvenile into
custody, authorities do not take him to either a juvenile processing office or a
statutorily designated alternative for questioning, but rather obtain a statement from
the juvenile in an area used to interview adult suspects, that statement is inadmissible. 
Baptist Vie Le, 993 S.W.2d at 654-56; In re U.G., 128 S.W.3d at 799; see Tex. Fam.
Code Ann. § 52.02(a); Salas v. State, 756 S.W.2d 832, 834-35 (Tex. App.--Corpus
Christi 1988, no pet.) (holding statement inadmissible when, instead of following
section 52.02, officers took juvenile first to police station where they obtained signed,
written statement from him before taking him to appropriate juvenile detention
center); see also Roquemore, 60 S.W.3d at 868; Marsh, 140 S.W.3d at 907 (holding
that statement of child that meets admissibility requirements of section 51.095 "may
be nonetheless inadmissible" when provisions in sections of Family Code "dictating
the necessary procedures for taking the child's statement, are violated," specifically
section 52.025(b)); In re D.Z., 869 S.W.2d at 564 (holding that statement illegally
seized or obtained in violation of Family Code provisions governing custodial
interrogation is inadmissible in adjudication hearing under section 54.03(e) of Family
Code).

 Here, Officer Garcia took appellant into custody and interrogated him in an
interview room used to interrogate both adult and juvenile subjects. Officer Garcia
testified that the room was "used routinely to interview all criminal suspects," and
that "adults get interviewed in this room as well." He also testified that the police
department had a designated juvenile section "but it wasn't equipped with the video
equipment at the time," and so he did not use it. Officer Garcia testified that he did
not know what constituted a juvenile processing office and that he did not "routinely
investigate juvenile crimes," but that his supervisor "advised me [that the interview
room] was mandated as a juvenile interview room." We conclude that the evidence
shows that the State violated sections 52.02(a) and 52.025(a) by not taking
appellant's custodial statement in a designated juvenile processing office.

 Once a defendant produces evidence of a section 52.02(a) or (b) violation, the
burden shifts to the State to prove compliance with that section. Roquemore, 60
S.W.3d at 869; see also Tex. Fam. Code Ann. §§ 51.17(a), 54.03(f) (Vernon 2008)
(providing that State bears burden of proving requirements for finding of delinquency
in adjudication proceedings by competent evidence). Here, the State failed to carry
its burden. The evidence shows that the interview room used by Officer Garcia was
"used routinely to interview all criminal subjects," and there is no more than a
scintilla of evidence in the record that the interview room was a designated juvenile
processing office, as provided in section 52.02(a). 

 We conclude that, in taking appellant's custodial statement, the State violated
the statutory requirements in Texas Family Code sections 52.02(a) and 52.025(a)
requiring that a juvenile's custodial statement be taken only in a proper place. See
Tex. Fam. Code. Ann. §§ 52.02(a), 52.025(a); Baptist Vie Le, 993 S.W.2d at 654-55.

2. Exclusion of Appellant's Legal Guardian in Violation of Section 52.025(c)
of the Family Code


 Appellant next contends that his legal guardian, his grandmother, was excluded
from the locked interview room in which Officer Garcia interrogated appellant,
despite her express request to be present, in violation of section 52.025() of the
Family Code, which states, "A child may not be left unattended in a juvenile
processing office and is entitled to be accompanied by the child's parent, guardian,
or the child's attorney." Tex. Fam. Code Ann. § 52.025(c).

 The record shows that appellant's grandmother, who was his legal guardian,
accompanied appellant to the GPD station. When Officer Garcia took appellant into
the interview room for questioning, she asked to be present with appellant, but
Officer Garcia denied her request and excluded her from the interview room.

 We hold that the State violated section 52.025(c)'s requirement that a child in
custody in a juvenile processing center "is entitled to be accompanied by the child's
parent, guardian, or the child's attorney." See Tex. Fam. Code Ann. § 52.025(c).

3. Failure to Warn that Statement of Juvenile May Be Used "In Evidence"
Against Him in Violation of Sections 52.025(b)(5) and 51.095(a)(1)(A) and
(a)(5) of the Family Code


 Finally, appellant contends that the State violated section 52.025(b)(5) of the
Family Code by failing to comply with sections 51.095(a)(1)(A) and (a)(5) in taking
his statement after taking him into custody. See Tex. Fam. Code Ann.
§ 52.025(b)(5). Appellant contends that the magistrate who gave him his warnings
prior to his electronically recorded statement failed to warn him that his statement
could be used "in evidence" against him, in violation of sections 51.095 (a)(1)(A) and
(a)(5) of the Family Code, thereby violating section 52.025(b)(5) of the Code and
rendering his statement inadmissible under section 53.04.

 Section 51.095 of the Family Code provides means for assuring the
voluntariness, hence the admissibility, of a juvenile's custodial statement. See Tex.
Fam. Code Ann. § 51.095. It states, in relevant part: (a) Notwithstanding Section 51.09, (5) the statement of a child is
admissible in evidence in any future proceeding concerning the matter
about which the statement was given if:


 (1) the statement is made in writing under a circumstance
described by Subsection (d) and:


 (A) the statement shows that the child has at some
time before the making of the statement
received from a magistrate a warning that:


 (i) the child may remain silent and not
make any statement at all and that any
statement that the child may be used in
evidence against the child;


 (ii) the child has the right to have an
attorney present to advise the child
either prior to any questioning or
during the questioning;


 (iii) the child is unable to employ an
attorney, the child has the right to have
an attorney appointed to counsel with
the child before or during any
interviews with peace officers or
attorneys representing the state; and


 (iv) the child has the right to terminate the
interview at any time;


 . . . . 


 (5) subject to Subsection(f), the statement is made orally under
a circumstance described by Subsection (d) and the
statement is recorded by an electronic recording device,
including a device that records images, and;


 (A) before making the statement, the child is
given the warnings described by Subsection
(1)(A) by a magistrate, the warning is a part
of the recording, and the child knowingly,
intelligently, and voluntarily waives each
right stated in the warning;


 . . . .


 (d) Subsections (a) (1) and (a) (5) apply to the statement of a child
made:


 (1) while the child is in a detention facility or other place of
confinement; [or]


 (2) while the child is in the custody of an officer. . . [.]


Tex. Fam. Code. Ann. § 51.095 (emphasis added). As stated above, any statement
of a juvenile taken in violation of the provisions of the Family Code governing the
substantial rights of a juvenile in custody is inadmissible under section 53.04(e) of
the Family Code. See Tex. Fam. Code. Ann. § 53.04(e). 


 Appellant's statement was electronically recorded. The video recording shows
that the municipal court judge whom Officer Garcia asked to read appellant his rights
entered the interview room and warned appellant about his right to counsel, his right
to remain silent during the interview, and his right to terminate the interview at any
time. The magistrate also warned appellant that "you don't have to make this
statement to anyone. And anything you say can be used against you." However, he
did not warn appellant that his statement could be used "in evidence" against him. 
Appellant contends that this omission is a direct violation of section 51.095(a)(1)(A),
which must be followed if a statement is electronically recorded under section
51.095(a)(5). Specifically, section 51.095(a)(1)(A) provides that a statement made
by a child is admissible only if, inter alia, "the child has at some time before the
making of the statement received from the magistrate a warning that the child may
remain silent and not make any statement at all and that any statement the child makes
may be used in evidence against [him]." Tex. Fam. Code Ann. § 51.095 (a)(1)(A)
(emphasis added); see also § 51.095(a)(5).

 In Sosa v. State, the Court of Criminal Appeals held that a warning of rights
made to any adult defendant that differs only slightly from the language of the statute
governing the admissibility of evidence--in that case, article 38.22 of the Code of
Criminal Procedure (6)--complies with the statute as long as it conveys its exact
meaning. 769 S.W.2d 909, 915-16 (Tex. Crim. App. 1989) (holding that defendant's
written statement was voluntarily made when he was read his rights three times
during course of evening in accordance with Miranda and article 38.22 and on each
occasion defendant acknowledged that he understood his rights, that he wished to
waive them, and that he wished to talk with FBI agents). Subsequent criminal cases,
many unpublished and therefore of no precedential value, have defined the
"substantial compliance" standard set in Sosa differently in different contexts, but
none of them in the juvenile context. See, e.g., Rutherford v. State, 129 S.W.3d 221,
226 (Tex. App.--Dallas 2004, no pet.) (finding substantial compliance with article
38.22 where orally administered warnings added to beginning "if I am unable to hire
a lawyer" instead of "if [I] am unable to employ a lawyer"); Gonzalez v. State, 967
S.W.2d 457, 459 (Tex. App.--Fort Worth 1998, no pet.) (finding substantial
compliance where Spanish translation of statutory DUI warning substituted for "that
refusal [to give a specimen] may be admissible in a subsequent prosecution," in Tex.
Rev. Civ. Stat. Ann. art. 6701l-5 § 2(b) (Vernon 1977), the words "tál acción puede
usarse en su contra en el futuro," which the parties translated as "[i]f you refuse the
analysis that action can be used against you in the future"); Williams v. State, 883
S.W.2d 317, 320 (Tex. App.--Dallas, 1994, pet. ref'd) (holding that phrase "I know
I have the right to remain silent" together with phrase "and knowing that anything I
say may be used against me" substantially complied with article 38.22 warnings even
though warnings failed to advise accused that his statement could be used against him
"at his trial" or "in court" because it advised him his statement could be used against
him "in any type of context not just those mentioned in article 38.22, subsection
2(a)(1) and (2)").

 We find that the case closest to the instant case, however, is State v. Subke, 918
S.W.2d 11 (Tex. App.--Dallas 1995, pet. ref'd), decided the year after Williams. In
Subke, the defendant was given the warning at the beginning of his video-recorded
statement that "[y]ou have the right to remain silent and not make any statement at all
and that any statement you make will be used against you at trial." Id. at 13. The
court held that because article 38.22 specifically provided that the accused must be
warned that "he has the right to remain silent and not to make a statement at all and
that any statement he makes maybe used against him at his trial" and also provided
that the accused must be warned that "any statement he makes maybe used as
evidence against him in court," the failure to give the accused both warnings rendered
his statement inadmissible. Id. at 14-15 (emphasis added). The court held that "the
Legislature deliberately placed both warnings . . . in the statute to inform the accused
of his rights." Id. at 15.

 Here, the magistrate failed to warn appellant that his video-recorded statement
could be used in evidence against him, and nothing else in the warnings alerted
appellant that his statement could be used in a hearing to adjudicate juvenile
delinquency. Moreover, the record shows that appellant did not understand that he
could be charged with a crime as a result of his statement or that his statement could
be used in evidence against him at a hearing to adjudicate juvenile delinquency. The
State produced no evidence that appellant understood the warnings given him and
their implications. 

 We hold that the warnings given appellant did not substantially comply with
the warnings required to advise him of his rights. Thus appellant's statement was
taken in violation of sections 51.095(a)(1)(A) and (a)(5) of the Family Code and,
therefore, in violation of section 52.025(b)(5) of the Code. See Tex. Fam. Code
Ann. § 52.025(b)(5).

 Because appellant's electronically recorded custodial statement was taken in
violation of sections 52.02(a), 52.025(a), (b)(5), and (c), and 51.095(a)(1)(A) and
(a)(5) of the Family Code, and thus violated appellant's substantial rights, we hold
that the statement was inadmissible in his juvenile adjudication hearing under section
54.03 of the Code. See Tex. Fam. Code Ann. § 54.03(e); see also Roquemore, 60
S.W.3d at 869; Comer, 776 S.W.2d at 195-96; Marsh, 140 S.W.3d at 907. 

 We sustain appellant's first point of error. 

 D. Harm Analysis

 When the statement of a juvenile is obtained in violation of Family Code
section 52.02(a)--much less in violation of multiple rights conferred by sections
52.02(a), 52.025, and 51.095--it must be suppressed and a harm analysis done. See
Roquemore, 60 S.W.3d at 867-68; Baptist Vie Le, 993 S.W.2d at 656. 

 We use the criminal standard of reversible error in a juvenile delinquency
proceeding, requiring the State to bear the burden of proving delinquent conduct
under the more stringent beyond a reasonable doubt standard rather than under the
civil standard. See Tex. Fam. Code Ann. § 51.17(a), (c); In re B.L.D., 113 S.W.3d
at 351; In re U.G., 128 S.W.3d at 799-800; In re D.Z., 869 S.W.2d at 566. Because
the improper admission of the statement of a juvenile in response to custodial
interrogation implicates the constitutional right against self-incrimination, it is
constitutional error to admit the statement into evidence. Marsh, 140 S.W.3d at 908;
see also In re U.G., 128 S.W.3d at 800. Under the standard for reviewing
constitutional error in criminal cases, we reverse the trial court's ruling unless the
record establishes beyond a reasonable doubt that the erroneous admission of the
statement did not contribute to the defendant's conviction or punishment. Tex. R.
App. P. 44.2(a); Franklin v. State, 138 S.W.3d 351, 354-55 (Tex. Crim. App. 2004);
Marsh, 140 S.W.3d at 908; In re U.G., 128 S.W. 3d at 800.

 Here, the only evidence against appellant other than his improperly admitted
electronically recorded statement was the complainant's testimony. The complainant
testified that she lied to appellant about her age. She testified that she did not
remember whether she had sex on February 14, 2006 with appellant. She testified
that she "[didn't] know if it was 2005 or 2006." She testified that she and appellant
had sex at her house. She also testified that she told investigators that she and
appellant had sex at his house, but she did not know the address of appellant's house. 
The State did not present any other evidence or testimony. 

 The complainant's testimony was inconsistent and contradictory. The State
had no other proof. We cannot, therefore, determine beyond a reasonable doubt that
the erroneous admission of appellant's statement, in which he confessed to having sex
with the complainant, did not contribute to his conviction. See Tex. R. App. P.
44.2(a). We hold that the trial court's error in admitting appellant's illegally obtained
statement was harmful error requiring reversal of his conviction.

 Because we have sustained appellant's first point of error and have concluded
that the error was harmful and requires reversal of his conviction, we need not
address his second point of error.

Conclusion

 We reverse the judgment of the trial court and remand for further proceedings
in accordance with this opinion.




 Evelyn V. Keyes

 Justice

Panel consists of Justices Keyes, Hanks, and Bland. 
1. A statement of a juvenile that is not the product of custodial interrogation is not
required to be suppressed by section 51.095 of the Family Code. See Tex. Fam. Code
Ann. § 51.095(d)(2) (Vernon 2008); Martinez v. State, 131 S.W.3d 22, 32 (Tex.
App.--San Antonio, no pet.). However, even in the absence of custody, due process
may be violated by the admission of a confession that was not voluntarily given. 
Martinez, 131 S.W. 3d at 35; see Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim.
App. 1995).


 Article 38.23 of the Texas Code of Criminal Procedure, governing "Evidence not to
be used" in criminal actions provides: (a) No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case. In any case
where the legal evidence raises an issue hereunder, the jury shall be instructed
that if it believes, or has a reasonable doubt, that the evidence was obtained in
violation of the provisions of this Article, then and in such event, the jury shall
disregard any such evidence so obtained.

 (b) It is an exception to the provisions of Subsection (a) of this Article that the
evidence was obtained by a law enforcement officer acting in objective good
faith reliance upon a warrant issued by a neutral magistrate based on probable
cause.

 Tex. Code Crim. Proc Ann. art. 38.23 (Vernon 2005).

2. Section 51.12(j) provides that, except under circumstances not relevant here, a child
may be detained only in a juvenile processing office in compliance with Section
52.025. See Tex. Fam. Code Ann. § 51.12(j) (Vernon 2008). 
3. Section 52.03 provides that "[a] law-enforcement officer authorized by [the Family
Code] to take a child into custody may dispose of the case without referral to juvenile
court" under certain circumstances, but that "[n]o disposition authorized by this
section may involve "keeping the child in law-enforcement custody." See Tex. Fam.
Code Ann. § 52.03 (Vernon 2008).
4. See Tex. Fam. Code Ann. § 52.01(a)(3)(A) (Vernon 2008) (providing circumstances
under which "a child may be taken into custody," including "by a law enforcement
officer . . . if there is probable cause to believe that the child has engaged in . . .
(A) conduct that violates a penal law of this state or (B) delinquent conduct
necessitating supervision"). 
5. Section 51.09 of the Family Code provides that, "[u]nless a contrary intent clearly
appears elsewhere in this title," a child may waive any right granted by the Family
Code "or by the constitution or laws of this state or the United States" in proceedings
under the Family Code if:


 (1) the waiver is made by the child and the attorney for the child;


 (2) the child and the attorney waiving the right are informed of and understand the
right and the possible consequences of waiving it;


 (3) the waiver is voluntary; and


 (4) the waiver is made in writing or in court proceedings that are recorded.


Tex. Fam. Code Ann. § 51.09. 
6. Article 38.22 requires warnings to the accused in a criminal trial that:


 (1) he has the right to remain silent and not make any statement at all and that
any statement he makes may be used against him at this trial;


 (2) any statement he makes may be used as evidence against him in court;


 (3) he has the right to have a lawyer present to advise him prior to and during
any questioning;


 (4) if he is unable to employ a lawyer, he has the right to have a lawyer
appointed to advise him prior to and during any questioning; and 


 (5) he has the right to terminate the interview at any time[.]


Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).