COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
|  |  | No. 08-06-00097-CV |
|  | § |  |
| IN THE MATTER OF J. A. B., A JUVENILE. |  | Appeal from the |
|  | § |  |
|  |  | 65th District Court |
|  | § |  |
|  |  | of El Paso County, Texas |
|  | § |  |
|  |  | (TC#05,01524) |
|  | § |  |

**O P I N I O N**

J.A.B., a juvenile, appeals the agreed dispositional judgment and order committing him to the Texas Youth Commission under a determinate sentence of fifteen years. J.A.B. pleaded true to engaging in delinquent conduct by committing aggravated assault with a deadly weapon. We affirm.

**I. SUMMARY OF THE EVIDENCE**

A hearing was held on J.A.B.'s motion to suppress his written and oral statements given to the police. The court granted the motion with regard to the two oral statements, but denied the motion with regard to the written statement.

Alberto Hernandez, an investigator with the El Paso Police Department, testified at the hearing on the motion to suppress the evidence. He testified that he had information that J.A.B. was a potential witness to a shooting, as he was riding in the vehicle involved in the shooting. On January 18, 2006, at about one o'clock in the afternoon, Detectives Hernandez and Ramon Lucero went to Cesar Chavez Academy and spoke with the principal. Hernandez spoke with J.A.B.'s mother, and she consented to have the child leave the school. J.A.B. also agreed to accompany the

detectives to the Mission Valley Regional Command Center, which was staffed with a juvenile processing center. Detective Hernandez testified that J.A.B. was not in custody. During the interview, J.A.B. denied any involvement in the shooting. He stated that he was in the vehicle and that the occupants were looking for certain persons, in order to fight them, but they could not find them, and he went home.

During the interview, Detective Hernandez received a telephone call from another investigator, who told him that one of the other occupants of the vehicle had stated that J.A.B. had been the shooter during the incident. Hernandez stopped the interview and informed J.A.B. that he had been implicated as the shooter, and he was not free to leave. He was escorted to the certified juvenile processing center located within the Mission Valley Regional Command Center for processing. As he was being fingerprinted, J.A.B. stated that he was in the car at the time of the shooting, but he was afraid to say anything, due to fear of retaliation upon his mother. This statement was not made in response to any questioning. He was told to stop speaking and was given his *Miranda* warnings. Another officer, Detective Aguirre, notified J.A.B.'s mother, and he was transported to the Juvenile Probation Department.

When the interview at the Juvenile Probation Department was completed, the officers were informed that J.A.B. wanted to provide a statement. He was taken to a magistrate, and he was then taken back to the Juvenile Probation Department, where he provided a statement indicating that he was the shooter in the incident. He was then transported back to the magistrate, where he signed the statement. J.A.B. was then returned to the Juvenile Probation Department.

Judge Rick Olivo testified that he was the magistrate who interviewed J.A.B. on January 18. J.A.B. was brought to the court by two detectives. Upon learning that J.A.B. wanted to make a statement, Olivo interviewed him and provided him with the requisite statutory warnings. J.A.B was

calm and did not appear to be nervous or intimidated. He indicated that he still wanted to give a statement to the police. J.A.B. was handcuffed and taken away by the detectives. At 8:45 p.m., J.A.B. was brought back before Judge Olivo, after he had given his statement, to determine whether the statement was given voluntarily. Again, J.A.B. was not nervous, and he did not appear to be intimidated. He told Judge Olivo that his statement was voluntary and that he had not been coerced.

Detective Lucero testified that he was with Detective Hernandez at the school and during the interview at the police station. Lucero testified that J.A.B agreed to accompany them to the police station. He was not in custody at the time, as he was merely a potential witness. The detective stated that J.A.B. was told he was not under arrest, and he could leave at any time. Neither he nor Hernandez was in a police uniform. J.A.B. was not handcuffed, and he was told he could stop the interview at any time.

Detective Jimmy Aguirre testified that he aided in the interviewing of J.A.B. During the entire interview, J.A.B. was coherent and was willing to talk to the officers. He was not threatened nor intimidated. After the information that implicated J.A.B. was received, he was placed in custody. Forty minutes later, Aguirre called J.A.B.'s mother, Ursula Bernard, notified her that J.A.B. was in custody, and explained to her the reason for his having been placed in custody.

Bernard testified that, when the principal at her son's school called her, he did not relate that the investigation centered around an attempted murder case. Furthermore, when she received the call from Detective Aguirre, he did not tell her for what her son was being detained. Bernard testified that, had she known the nature of the investigation, she would not have allowed him to be taken from the school, and she would not have allowed him to give a statement at the police station.

J.A.B. testified that, when he gave his statement, he did not understand his rights and he would not have given the statement, but for his detention for the entire day at the police station. He

stated that he was forced to give the statement by the officers in that he was "egged on" to give the written statement. J.A.B. related that Judge Olivo did not tell him that any prior oral statement that he had given could not be used against him. Had he been so warned, he would not have given the statement.

## II. DISCUSSION

In Issues Nos. One and Two, J.A.B. contends that he was in custody from the inception of his involvement with the police and that his due process rights were violated under section 51.095(a) of the Texas Family Code and article 38.22 of the Texas Code of Criminal Procedure. He asserts further that his written statement was coerced and involuntarily given. We review a trial court's ruling on a motion to suppress in the light most favorable to the ruling. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). A trial court judge is uniquely situated to observe the demeanor and appearance of a witness and to make factual determinations. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). A trial court's ruling on a motion to suppress is typically reviewed for an abuse of discretion, because the trial court has the discretion to believe or disbelieve witness testimony. *Jeffley v. State*, 38 S.W.3d 847, 853 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd) (citing *Johnson v. State*, 871 S.W.2d 744, 748 (Tex. Crim. App. 1994)). Almost total deference is given to the trial court's rulings on mixed questions of law and fact that are based on an evaluation of credibility and demeanor. *Id.* (citing *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)). However, mixed questions of law and fact that are not based on evaluations of credibility or demeanor, such as the question of whether an interrogation is custodial, are reviewed *de novo*. *Id.* The trial court's ruling will be upheld, if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855-56; *Villarreal*, 935 S.W.2d at 138.

In general, a person is in custody if a reasonable person under the same circumstances would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 114 S. Ct. 1526 (1994)). When the person involved is a minor, courts consider his age and all the circumstances surrounding the interrogation to decide whether there was a formal arrest or a restraint of movement to the degree associated with formal arrest. *In re V.P.*, 55 S.W.3d 25, 31 (Tex. App.--Austin 2001, pet. denied). Stated another way, the court's inquiry is whether, based on the objective circumstances, a reasonable child of the same age would believe his freedom of movement was significantly restricted. *In re D.A.R.*, 73 S.W.3d 505, 511 (Tex. App.--El Paso 2002, no pet.). The factors relevant to the determination of whether a child is in custody include whether there was probable cause to arrest; the focus of the investigation; and, to the extent communicated or manifested, the officer's subjective intent and the child's subjective beliefs. *Dowthitt,* 931 S.W.2d at 254.

The State maintains that the first oral statement, where J.A.B. stated that the individuals they wanted to attack were never found, was made before he was in custody. The State also asserts that the second statement, made after he was in custody, was not made in response to questioning. However, since the court found that these oral statements were inadmissible, we will conduct our analysis of the admissibility of J.A.B's written statement in light of that ruling; we will not speculate on the grounds the court utilized in determining that the two oral statements were inadmissible, because those determinations are not before us. *See In re R.J.H.*, 79 S.W.3d 1, 7 (Tex. 2002). There was certainly evidence before the court that Appellant was not in custody, until the phone call was received that implicated J.A.B.

For a statement to be involuntary, there must have been "'official, coercive conduct of such

a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker.'" *Id.* at 6 (citing *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)). There was adequate testimony for the court to determine that J.A.B. was not coerced by the officers who interviewed him. Judge Olivo stated that J.A.B. did not appear intimidated, and his demeanor was calm.

In response, J.A.B. cites *Griffin v. State*, 765 S.W.2d 422 (Tex. Crim. App. 1989), for the proposition that, if a juvenile gives a written statement after having given an inadmissible oral statement, a magistrate must explain to the juvenile that his prior oral statements may not be used against him. However, the juvenile must additionally show that the written statement was involuntarily given, and the admissibility of the written confession is determined based upon the totality of the circumstances under which the statement was made. *Id.* at 429 ("unless an initial statement, albeit unwarned, is actually 'involuntary,' the Miranda warning preceding a subsequent statement 'ordinarily should suffice to remove the conditions that precluded admission of the earlier statement'") (citing *Oregon v. Elstad*, 470 U.S. 298, 314, 105 S. Ct. 1285, 1296 (1985)). In the instant case, notwithstanding J.A.B.'s testimony that he would not have given the statement had he known that the oral statements could not be used against him, viewing the totality of the circumstances, we find that the court did not err in finding the written statement admissible. The court could well have disbelieved J.A.B.'s testimony and there is evidence that he knew he could stop the interview at any time. Further, there is evidence that he was not coerced to give the statement and that his demeanor was calm and coherent throughout the entire process.

Issues Nos. One and Two are overruled.

In Issue No. Three, J.A.B. maintains that the notice given to his mother, pursuant to section 52.02 of the Family Code, was inadequate. This section provides, in relevant part:

(b)  A person taking a child into custody shall promptly give notice of the person's action and a statement of the reason for taking the child into custody, to:

(1)  the child's parent, guardian, or custodian . . . .

TEX. FAM. CODE ANN. § 52.02(b)(1).

Initially, we note, notwithstanding the testimony of Ursula Bernard to the contrary, that the court was entitled to believe the testimony of Detective Aguirre, who stated that he informed Bernard of the reason why J.A.B. was detained.  The court could therefore have reasonably determined that the notice was timely, given the fact that the processing of J.A.B. through the juvenile probation system had just begun, and that J.A.B.'s mother had an adequate opportunity to intervene.  Furthermore, even if we were to assume that the forty-minute delay constituted a violation of the Family Code, there must be a causal connection between the violation and the obtaining of the statement.  *Gonzales v. State*, 67 S.W.3d 910, 913 (Tex. Crim. App. 2002).  Given the extensive processing that ensued after J.A.B. was placed in custody, we find there was no causal connection.  Issue No. Three is overruled.

### III.  CONCLUSION

We affirm the judgment of the trial court.

KENNETH R. CARR, Justice

April 17, 2008

Before Chew, C.J., Carr, and Gomez, JJ.
Gomez, J., sitting by assignment