COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-09-00184-CV |
| | § | Appeal from the |
| IN THE MATTER OF S.M.C., A JUVENILE. | § | 65th District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 08,01354) |
| | § | |

**O P I N I O N**

By petition, Appellant, S.M.C., was charged with the offense of possessing a prohibited weapon, namely, knuckles, on the physical premises of his junior high school in violation of Texas Penal Code 46.03(a)(1). TEX. PENAL CODE ANN. §§ 46.03(a)(1), 46.05(a)(6) (West Supp. 2010). Appellant now appeals the trial court's denial of his motion to suppress evidence recovered during a search of his school locker. We affirm.

**BACKGROUND**

By amended petition, Appellant was alleged to have engaged in delinquent conduct, which included criminal mischief (Count I) and possessing a prohibited weapon, knuckles, on the physical premises of a school or educational institution (Count II). TEX. PENAL CODE ANN. §§ 28.03(a), (b)(2), 46.03(a)(1), 46.05(a)(6). Thereafter, Appellant filed a motion to suppress evidence.

Evidence presented at the suppression hearing showed that on or about March 11, 2009, a student at East Montana Middle School informed Ms. Josephine Angerstein-Guzman, an Assistant Principal, that "[Appellant] is high, you might want to check him out." The same student had on a previous occasion discussed with Angerstein-Guzman Appellant's use of drugs before school.

Angerstein-Guzman thereafter encountered the school district's canine officer, Officer Harrison, in the hallway of the school, advised him of the information she had received regarding Appellant, and upon seeing Appellant in the hallway, Angerstein-Guzman and Harrison escorted Appellant to the nurse's office, where nurse's aide Gonzalez was present.[1] Angerstein-Guzman requested that campus security Officer Ponce attend Gonzalez' examination of Appellant.[2] Upon examination, Gonzalez found Appellant's eyes to be red, but did not consider him to be under the influence of drugs. Angerstein-Guzman, who had previous experience in observing individuals with red, glossy, and dilated eyes who were under the influence of drugs, observed Appellant's eyes to be red as well as slightly glossy and dilated. Although Appellant asserted that pink eye and eye drops were the cause of his red eyes, Gonzalez had no parental note indicating that Appellant had pink eye or was otherwise being treated for that ailment. Gonzalez acknowledged that Appellant's red eyes could have resulted from smoking marijuana.

Angerstein-Guzman testified that upon receiving the tip and seeing Appellant's eyes, she suspected that he had used something, even if it was not enough to charge him with being under the influence. She also testified that the school's administration follows through on every tip that comes in. In accordance with school procedure, Angerstein-Guzman continued to investigate the possibility that Appellant was under the influence of or had drugs at school. Angerstein-Guzman explained that when conducting a search, school officials search the person's belongings, backpack, person, pockets and "[i]f there is reasonable suspicion, we go ahead and continue to search lockers [and] vehicles, if we need to[.]" Angerstein-Guzman stated that her training and experience have demonstrated that

---

[1] Officer Harrison's canine was neither present nor was utilized at any time in relation to Appellant, his locker, or any searches related thereto.

[2] Officers Ponce and Harrison are not certified peace officers.

students hide drugs in shoes, notebooks, backpacks, lockers, and vehicles.

Appellant's notebook was searched for packets or residue of drugs, but none were found. Officer Ponce did a "pat down" search of Appellant for weapons. Appellant was asked to untuck his shirt and run his own fingers along the waistband of his pants, empty and turn out his pockets, and remove his socks and shoes but no drugs were found. Angerstein-Guzman then directed Officers Ponce and Harrison to check Appellant's locker because he may have been hiding drugs there. Appellant was asked to accompany the officers to the locker. Officer Harrison asked Appellant if he had anything illegal in his locker, and Appellant initially said that he did not, but upon arriving at the locker, Appellant informed the officers that he had a belt buckle. As Officer Ponce proceeded to open the locker, Appellant told the officers that he had brass knuckles. As Officer Ponce pulled a backpack from Appellant's locker, Officer Harrison noted that there was something shiny in the backpack. Officer Harrison reached into the backpack and retrieved brass knuckles, a weapon whose possession is prohibited on school premises. TEX. PENAL CODE ANN. §§ 46.03(a)(1), 46.05(a)(6). No other contraband was discovered in the locker.

The Clint Independent School District's Student Code of Conduct was admitted into evidence along with a receipt signed by Appellant and his mother, acknowledging that they had received, read, and agreed to abide by the Code of Conduct. The Code of Coduct provides:

> Students shall have a diminished expectation of privacy while under the jurisdiction of the District. School administrators may search a student's outer clothing, pockets, or property by establishing reasonable suspicion or securing the student's voluntary consent. . . . Areas such as lockers, which are owned by the District and jointly controlled by the District and student, may be searched, and school Administrators may routinely conduct blanket locker searches. Students shall not place, keep, or maintain any article or material in school-owned lockers that is forbidden by District Policy or that would lead school officials to reasonably believe that it would cause a substantial disruption on school property or at a school-sponsored function. Students are responsible for any prohibited item found in their possession, in their lockers, or in vehicles parked on school property, and shall be subject to appropriate

school disciplinary action in accordance with this CISD Student Code of Conduct and/or [prosecution].

The Code of Conduct states that a student's possession of a prohibited weapon, including knuckles, as defined in the Texas Penal Code is an offense for which a student may be expelled.

East Montana Middle School Principal Alfredo Solis testified that school lockers are searched "continuously," and that students are aware of the searches. When random searches are performed at the school, they are typically performed sporadically with the assistance of a dog.

Based on the evidence and testimony presented, the trial court denied Appellant's motion to suppress, and upon consideration of the stipulated evidence, dismissed Count I, and adjudicated Appellant delinquent under Count II, possession of a prohibited weapon on school premises.

## DISCUSSION

In his sole issue on appeal, Appellant complains that the trial court committed error when it denied his motion to suppress evidence because the search of his locker was conducted without any reasonable suspicion and in violation of his rights under the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution. U.S. CONST. amends. IV, XIV; TEX. CONST. art. I, § 9. We disagree.

### Standard of Review

In reviewing a motion to suppress in a juvenile case, we utilize the same standard as in a non-juvenile criminal case. TEX. FAM. CODE ANN. § 51.17(c) (West Supp. 2010); *In the Matter of S.J.*, 977 S.W.2d 147, 151 (Tex. App. – San Antonio 1998, no pet.). We review a trial court's decision to suppress evidence under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts while reviewing *de novo* the court's application of the law to those facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *In re D.J.C.*, 312

S.W.3d 704, 711 (Tex. App. – Houston [1st Dist.] 2009, no pet.). When the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *In re D.J.C.*, 312 S.W.3d at 711; *In re J.A.B.*, 281 S.W.3d 62, 65 (Tex. App. – El Paso 2008, no pet.). We conduct a *de novo* review of the trial court's legal rulings. *Iduarte*, 268 S.W.3d at 548; *In re D.J.C.*, 312 S.W.3d at 711; *In re J.A.B.*, 281 S.W.3d at 65. We will uphold a trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *Iduarte*, 268 S.W.3d at 548; *In re D.J.C.*, 312 S.W.3d at 711; *In re J.A.B.*, 281 S.W.3d at 65. We afford a great deal of deference to the trial judge's rulings on questions of historical fact, as well as to rulings that both apply the law to facts and turn on an evaluation of credibility and demeanor. *Iduarte*, 268 S.W.3d at 548; *In re D.J.C.*, 312 S.W.3d at 711; *In re J.A.B.*, 281 S.W.3d at 65. However, we may review *de novo* mixed questions of law and fact when they do not depend on credibility or disputed facts. *Iduarte*, 268 S.W.3d at 548; *In re D.J.C.*, 312 S.W.3d at 711; *In re J.A.B.*, 281 S.W.3d at 65.

The Fourth Amendment prohibits unreasonable searches and seizures of students by public school officials. *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S.Ct. 733, 738, 83 L.Ed.2d 720 (1985). However, in balancing the privacy interests of school children and the substantial need of school teachers and administrators to maintain order in the school, the United States Supreme Court has determined that the legality of a search of a student depends not upon probable cause to believe the student has violated or is violating the law but rather, upon the reasonableness, under all of the circumstances, of the search. *T.L.O.*, 105 S.Ct. at 742; *Coronado v. State*, 835 S.W.2d 636, 640 (Tex. Crim. App. 1992).

In determining reasonableness, we apply a two-pronged test. *T.L.O.*, 105 S.Ct. at 742-43; *Coronado*, 835 S.W.2d at 640. The first prong requires that we determine whether the search was justified at its inception. *T.L.O.*, 105 S.Ct. at 742-43; *Coronado*, 835 S.W.2d at 640. Typically, a teacher or school official's search of a student is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rule of the school. *T.L.O.*, 105 S.Ct. at 743; *Coronado*, 835 S.W.2d at 640. The second prong requires that we determine whether the search, as actually conducted, was reasonably related in scope to the circumstances which justified the interference in the first place. *T.L.O.*, 105 S.Ct. at 743, *citing Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct., 1868, 1879, 20 L.Ed.2d 889 (1968); *Coronado*, 835 S.W.2d at 640. A search is deemed permissible in scope when the measures adopted and used are reasonably related to the objectives of the search and are not excessively intrusive in light of the age and sex of the student and the nature of the infraction. *T.L.O.*, 105 S.Ct. at 743; *Coronado*, 835 S.W.2d at 640. Moreover, the requirement of reasonable suspicion is not a requirement of absolute certainty. *T.L.O.*, 105 S.Ct. at 745, *citing Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484 (1971). Instead, sufficient probability, not certainty, is the touchstone of reasonableness. *Id.*

*Application*

Although he concedes that the first prong of *T.L.O.* was met in this case, Appellant contends that upon Gonzales' determination that he was not under the influence of a drug, there was no longer a reasonable basis for searching the locker. For this reason, and because the student's tip that Appellant was "high" did not suggest that appellant had drugs or weapons on his person or anywhere else, Appellant contends that there was no reasonable suspicion to conduct the search of his person or the school's locker.

In its written findings of fact and conclusions of law, the trial court found that despite Gonzalez' determination that Appellant was not under the influence, both Angerstein-Guzman and Gonzalez had observed Appellant's eyes to be red and his pupils dilated, and both testified that they had observed individuals who had red eyes after smoking marijuana. The trial court also found that Appellant voluntarily informed Officers Ponce and Harrison that he had brass knuckles in his locker before they opened and searched the school locker.

The trial court concluded that the search of Appellant was reasonable because it was justified at its inception as a result of the student's tip that Appellant was "high." Although the initial detention and search of Appellant's person revealed that he had red eyes and dilated pupils, but no drugs, the trial court determined that it was reasonable for Angerstein-Guzman to suspect that Appellant may have placed marijuana within the locker and that the subsequent search of the locker was reasonably related in scope to the circumstances justifying the search in the first place. The trial court likewise concluded that a student does not have a legitimate expectation of privacy in a school locker as it is school property that remains under the control of school authorities.

Although it is the fruit of the second search, the "knuckles," that is at issue in Appellant's motion to suppress evidence, the validity of that search depends upon the reasonableness of the initial search for marijuana. *See T.L.O.*, 105 S.Ct. at 744. Despite Gonzalez' determination that Appellant was not under the influence of drugs, when viewed in the light most favorable to the trial court's ruling, we find the evidence supports the trial court's factual determination that both Angerstein-Guzman and Gonzalez had observed Appellant to have red eyes with dilated pupils, which they had previously observed in persons who had smoked marijuana. *See T.L.O.*, 105 S.Ct. at 745 (teacher's report that student was smoking in lavatory gave principal reason to suspect that student was in possession of cigarettes and that student's purse was obvious place in which to find

them, nor was principal's suspicion an "inchoate and unparticularized suspicion or 'hunch'"); *Iduarte*, 268 S.W.3d at 548; *In re D.J.C.*, 312 S.W.3d at 711; *In re J.A.B.*, 281 S.W.3d at 65.

Reviewing *de novo* the trial court's legal conclusions, we find them to be supported by the record and correct under the reasonableness test established by the United States Supreme Court in *T.L.O. T.L.O.*, 105 S.Ct. at 742-43; *Iduarte*, 268 S.W.3d at 548; *In re D.J.C.*, 312 S.W.3d at 711; *In re J.A.B.*, 281 S.W.3d at 65. Because Angerstein-Guzman was informed that Appellant was "high," the initial search of Appellant was justified at its inception. While it is true that no drugs were found during the initial search of Appellant's notebook and clothing, both Gonzalez and Angerstein-Guzman had observed that persons who smoke marijuana thereafter exhibit red eyes with dilated pupils, and Angerstein-Guzman testified that some students hide contraband in the school lockers. Angerstein-Guzman had reasonable grounds for suspecting that a search of Appellant's locker would produce evidence that he was violating school rules, namely that Appellant had contraband in the locker. *T.L.O.*, 105 S.Ct. at 742-43; *compare Coronado*, 835 S.W.2d at 641 (principal had reasonable grounds to suspect student was "skipping" school in violation of school rules and, consequently, "pat down" of student for safety reasons was justified; however, subsequent searches of student's clothing, person, locker, and vehicle were not reasonably related to any discovery from the initial "pat down" for safety). We therefore conclude that the subsequent search of the locker was reasonably related in scope to the circumstances justifying the search in the first place and was not excessively intrusive. *T.L.O.*, 105 S.Ct. at 742-43; *Iduarte*, 268 S.W.3d at 548; *In re D.J.C.*, 312 S.W.3d at 711; *In re J.A.B.*, 281 S.W.3d at 65. Moreover, the Code of Conduct informs students and parents that school lockers, which are owned by the school district, may be searched and that students are responsible for any prohibited items, such as knuckles, that are found in his or her school locker. Therefore, the trial court's conclusion that a student, here Appellant, does not have a legitimate expectation of privacy in a school locker was correct. *See Shoemaker v.*

*State*, 971 S.W.2d 178, 182 (Tex. App. – Beaumont 1998, no pet.) (court of appeals held that a student does not have a reasonable expectation of privacy in his school locker, which is school property that remains under the control of the school authorities).

Having determined that the evidence supports the trial court's findings of fact, and having determined *de novo* that the two-pronged reasonableness test of *T.L.O.* has been met, Appellant's issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

GUADALUPE RIVERA, Justice

March 23, 2011

Before Chew, C.J., McClure, and Rivera, JJ.