**Opinion filed April 14, 2011**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00172-CV

_____

## IN THE MATTER OF M.A.C., A JUVENILE

**On Appeal from the County Court at Law**
**Midland County, Texas**
**Trial Court Cause No. J05964**

### O P I N I O N

The jury found that M.A.C. engaged in delinquent conduct by committing the offenses of indecency with a child by contact and aggravated sexual assault of a child. The juvenile court[1] placed him on probation in the custody of the Texas Department of Family Protective Services until his eighteenth birthday. In two issues, M.A.C. contends that the juvenile court erred by admitting his recorded statement into evidence and by permitting a forensic interviewer to testify about the details of the victim's outcry. We overrule these contentions and affirm the judgment.

*Background Facts*

M.A.C. and the victim, J.M., resided in the same foster home in Midland in March 2009. M.A.C. was thirteen years old at the time, and J.M. was nine years old. One of the juveniles' foster parents, Austin Harris, testified that he and the youth in the foster home watched a movie in the main living area of the home on the evening of March 14, 2009. After the movie ended,

_____

[1]The county court at law sat as a juvenile court.

he told all of the children that they needed to go to their respective bedrooms and get ready for bed. After a momentary absence, Mr. Harris returned to the main living area to adjust the thermostat for the home. He found M.A.C. and J.M. in the main living area with the lights turned off. J.M. said that she and M.A.C. were "just talking"; M.A.C. told Mr. Harris that he was looking for a pencil.

Mr. Harris reported his discovery to his wife, Linea Harris. Based on their suspicions, Mrs. Harris decided to question J.M. about the incident. She and Mr. Harris also questioned M.A.C. about the incident. M.A.C. told them that he had done "something very bad" in that he had touched J.M.'s breasts over her clothes. Mr. and Mrs. Harris subsequently reported the incident to their supervisors. Alexandra Arredondo, a former foster care case manager for the Buckner Home, testified that M.A.C. told her that he and J.M. touched each other under their shirts and that they were "humping" with their clothes on.

Andra K. Chamberlin, a forensic interviewer with the Midland Rape Crisis and Children's Advocacy Center, subsequently interviewed J.M. She testified that J.M. told her about three different incidents that had occurred with M.A.C. They included: (1) "humping" over clothes; (2) M.A.C. sucking on J.M.'s breasts and M.A.C. engaging in sexual intercourse with J.M.; and (3) another incident of "humping" over clothes when they were interrupted by Mr. Harris.

Detective Charles Sims of the Midland Police Department met with M.A.C. after Chamberlin interviewed J.M. Detective Sims subsequently transported M.A.C. to meet with Honorable Joe L. Matlock, Justice of the Peace, for the administration of magistrate warnings for the purpose of obtaining a recorded statement from M.A.C. Judge Matlock testified that Detective Sims was present when he administered the magistrate warnings to M.A.C. and that Detective Sims remained present during the time that Judge Matlock subsequently asked M.A.C. questions pertaining to the voluntariness of his statement.[2] Judge Matlock testified that he requested Detective Sims to remain present during the entire warning and interview process. Furthermore, Detective Sims testified that he was armed during this process and that his firearm was visible at all times.

In the recorded statement, M.A.C. admitted that three incidents occurred with J.M. He stated that the first incident involved him accidently touching J.M. The second incident involved

---

[2]It also appears that Judge Matlock remained present during the time that M.A.C. gave his oral statement to Detective Sims.

him touching and sucking J.M.'s breasts. He also stated that J.M. asked to see his penis and that he showed it to her, after which they engaged in skin-to-skin contact. He initially denied that any penetration occurred during this episode, but then he later stated that penetration may have occurred for thirty seconds.[3] The third incident he related pertained to the time that Mr. Harris caught him and J.M. in the main living area.

*Admissibility of Recorded Statement*

M.A.C. asserts in his first issue that the trial court erred in admitting his recorded statement into evidence. He contends that it was illegally obtained in violation of TEX. FAM. CODE ANN. § 51.095 (Vernon 2008). We note at the outset of our analysis that M.A.C. is not asserting that his statement was involuntary. *See Martinez v. State*, 131 S.W.3d 22, 35 (Tex. App.—San Antonio 2003, no pet.) (Due process may be violated by the admission of a confession that was not voluntarily given.). Instead, he contends that officials violated the procedural requirements of Section 51.095(a)(1)(B)(i).

We review a trial court's ruling on a motion to suppress the statement of a juvenile in an adjudication proceeding under the same abuse of discretion standard as a motion to suppress the statement of an adult in a criminal proceeding. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *In re J.A.B.*, 281 S.W.3d 62, 65 (Tex. App.—El Paso 2008, no pet.). When reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *In re J.A.B.*, 281 S.W.3d at 65. We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *Iduarte*, 268 S.W.3d at 548; *In re J.A.B.*, 281 S.W.3d at 65. We give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *Best v. State*, 118 S.W.3d 857, 861-62 (Tex. App.—Fort Worth 2003, no pet.). However, we review de novo a trial court's rulings on application-of-law-to-fact questions that do not turn on the credibility and demeanor of witnesses. *Johnson*, 68 S.W.3d at 652-53.

M.A.C. contends that the provisions of Section 51.095(a)(1)(B)(i) were violated because Detective Sims was present during the entire warning and interview process and was armed during this process with his firearm visible at all times. Given Judge Matlock's testimony that he

---

[3] J.M. testified at trial that M.A.C. penetrated her female sexual organ with his penis.

requested the presence of Detective Sims, we focus our attention to the presence of Detective Sims's weapon during the interview process. The critical inquiry is whether or not the weapon prohibition applied to the taking of M.A.C.'s recorded statement.

The State asserted at trial that the weapon prohibition of Section 51.095(a)(1)(B)(i) did not apply because M.A.C.'s statement was not the result of a custodial interrogation.[4] Section 51.095(a)(1), (b)(1), (d); *see Martinez*, 131 S.W.3d at 32. The State asserts a different legal theory on appeal for upholding the trial court's admission of M.A.C.'s statement. Specifically, the State contends that the weapon prohibition set out in Section 51.095(a)(1)(B)(i) is inapplicable to M.A.C.'s statement because he gave a recorded statement pursuant to section 51.095(a)(5). We agree. As previously noted, we are required to uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Iduarte*, 268 S.W.3d at 548; *In re J.A.B.*, 281 S.W.3d at 65.

Subsection (a) of Section 51.095 consists of five subparts, each of which applies to a particular type of statement that a juvenile may make: subpart (a)(1) applies to written statements; subpart (a)(2) applies to oral statements evidencing the child's guilt; subpart (a)(3) applies to res gestae statements; subpart (a)(4) applies to statements made in court proceedings; and subpart (a)(5) applies to statements recorded by an electronic recording device. We focus our attention on subparts (a)(1) (written statements) and (a)(5) (recorded statements). Subpart (a)(1) is of interest because the weapon prohibition is found under this subpart. Subpart (a)(5) is of interest because M.A.C. gave a recorded statement.

The provisions for written statements contained in subpart (a)(1) contemplate two periods during which the magistrate will interact with the juvenile. Subpart (a)(1)(A)(i)-(iv) sets out four warnings that the magistrate must give the juvenile prior to the juvenile giving the written statement. The provisions of subpart (a)(1)(B)(i) set out the procedures that the magistrate must follow to assess the voluntariness of the juvenile's written statement after its preparation. Specifically, subpart (a)(1)(B)(i) provides:

> [T]he statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present, except that a magistrate may require a bailiff or a law enforcement officer if a bailiff is not available to be present if the magistrate determines that the presence of the bailiff or law enforcement officer is necessary for the personal safety of the magistrate or

---

[4]We express no opinion with regard to the State's contention that M.A.C.'s statement was not the result of a custodial interrogation.

4

other court personnel, provided that the bailiff or law enforcement officer may not carry a weapon in the presence of the child.

Thus, by its express terms, the weapon prohibition applies when the juvenile executes a written statement in the presence of a magistrate.

The procedures for obtaining a recorded statement from a juvenile are similar to those applicable to obtaining a written statement. They are similar in the respect that subpart (a)(5)(A) requires a magistrate to give the juvenile the same warnings set out in subpart (a)(1)(A) for written statements. However, the statute provides a different follow-up procedure for recorded statements. The applicable follow-up procedure for a recorded statement is set out in subsection (f):

> A magistrate who provides the warnings required by Subsection (a)(5) for a recorded statement may at the time the warnings are provided request by speaking on the recording that the officer return the child and the recording to the magistrate at the conclusion of the process of questioning. The magistrate may then view the recording with the child or have the child view the recording to enable the magistrate to determine whether the child's statements were given voluntarily. The magistrate's determination of voluntariness shall be reduced to writing and signed and dated by the magistrate. If a magistrate uses the procedure described by this subsection, a child's statement is not admissible unless the magistrate determines that the statement was given voluntarily.

As reflected above, the follow-up procedure set out in subsection (f) for recorded statements is discretionary. Furthermore, it does not contain the weapon prohibition found in subpart (a)(1)(B)(i) for written statements. Accordingly, the trial court did not err in allowing M.A.C.'s recorded statement to be admitted despite the fact that Detective Sims's firearm was visible. Appellant's first issue is overruled.

*Admissibility of Outcry Testimony*

In his second issue, M.A.C. challenges the admissibility of Chamberlin's outcry testimony on the contention that she was not the first person, eighteen years of age or older, to whom J.M. made a statement about the alleged violations of the Penal Code as required by TEX. FAM. CODE ANN. 54.031(b)(2) (Vernon Supp. 2010). In this regard, M.A.C. points out that J.M. made reports to her foster parents, Arredondo, and Margaret Gray of Buckner Children and Family Services before speaking with Chamberlin.

The outcry statute found in Section 54.031 is to be interpreted and applied in a juvenile trial in the same manner as the parallel rule in the Code of Criminal Procedure is applied in an

adult criminal trial. *In re Z.L.B.*, 102 S.W.3d 120, 123 (Tex. 2003); *In re J.G.*, 195 S.W.3d 161, 169 (Tex. App.—San Antonio 2006, no pet.). The trial court has broad discretion in considering whether a child's statement falls within the hearsay exception provided by Section 54.031, and the trial court's exercise of that discretion will not be disturbed on appeal unless a clear abuse of discretion is established by the record. *In re J.G.*, 195 S.W.3d at 169; *Chapman v. State*, 150 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (The trial court has broad discretion in determining who the proper outcry witness is.).

An outcry witness is not person-specific but event-specific. *In re J.G.*, 195 S.W.3d at 169; *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). The proper outcry witness to a single event is the first adult person other than the defendant to whom the victim made a statement describing the violation in question. *In re J.G.*, 195 S.W.3d at 169-70; *Broderick*, 35 S.W.3d at 73-74. The statement must be one that in some discernible manner describes the alleged offense; it must be more than just words generally alluding that something in the area of child abuse was going on. *In re Z.L.B.*, 102 S.W.3d at 122; *In re J.G.*, 195 S.W.3d at 170; *see Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). When a child discloses a general allusion of abuse to an adult, rather than a clear description of the event, that adult is not the proper outcry witness. *In re Z.L.B.*, 102 S.W.3d at 122; *In re J.G.*, 195 S.W.3d at 170.

In its petition for delinquency trial, the State alleged that M.A.C. engaged in delinquent conduct by violating two felony penal laws. Specifically, the State alleged that M.A.C. engaged in sexual contact with J.M. by touching her breast with the intent to arouse and gratify his sexual desire. *See* Tex. Penal Code Ann. § 21.11 (Vernon Supp. 2010). The State also alleged that M.A.C. intentionally and knowingly caused the penetration of the female sexual organ of J.M. with his sexual organ. *See* Tex. Penal Code Ann. § 22.021 (Vernon Supp. 2010). As noted previously, Chamberlin offered outcry testimony pertaining to these allegations. Our analysis focuses on whether or not J.M. reported these specific allegations to the foster parents, Arredondo, or Gray before disclosing them to Chamberlin.

Neither the foster parents nor Arredondo testified in detail about the matters that J.M. disclosed to them. However, representatives of Buckner Children and Family Services prepared an incident report. The trial court admitted the incident report into evidence at M.A.C.'s request. Gray stated in the report that J.M. told Mrs. Harris that M.A.C. "touched her between her legs and he humped her for a second." Gray also stated in the report that J.M. told her and Arredondo that she and M.A.C. "had been wrestling and he picked her up and took her into the living area

6

and began to hump her." Gray also reported that J.M. told them that M.A.C. "touched her under her clothes and that he had poked her hard." Lastly, Gray stated in the report that J.M. told them that M.A.C. "picked up her shirt and tried to bite her (and pointed to her breast.)"

As set forth above, the State alleged that M.A.C. engaged in sexual contact with J.M. by touching her breast and by penetrating her female sexual organ with his sexual organ. The statements from J.M. contained in Gray's report do not reach the level of the alleged violations. The statements pertaining to humping and poking are too general to address the allegation of penetration. In this regard, Chamberlin testified that J.M. described "humping" as "lay[ing] on top of each other [and moving]." With regard to the allegation of M.A.C. touching J.M.'s breast, J.M.'s statement to Gray and Arredondo was only that M.A.C. "tried to bite [her breast.]" In the absence of more specific statements pertaining to the alleged violations, we conclude that the trial court did not abuse its discretion in determining that Chamberlin was the proper outcry witness. Appellant's second issue is overruled.

*This Court's Ruling*

The judgment of the juvenile court is affirmed.


TERRY McCALL
JUSTICE


April 14, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.