Opinion filed April 14,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00172-CV

                                                    __________

 

                        IN
THE MATTER OF M.A.C., A JUVENILE  

 

 

 

                                  On
Appeal from the County Court at Law

                                                          Midland
County, Texas

                                                     Trial
Court Cause No. J05964

 



 

                                                                  O
P I N I O N

 

The jury found that M.A.C. engaged in delinquent conduct by committing the offenses of
indecency with a child by contact and aggravated sexual assault of a child.  The
juvenile court[1]
placed him on probation in the custody of the Texas Department of Family
Protective Services until his eighteenth birthday.  In two issues, M.A.C.
contends that the juvenile court erred by admitting his recorded statement into
evidence and by permitting a forensic interviewer to testify about the details
of the victim’s outcry.  We overrule these contentions and affirm the judgment.

Background
Facts

M.A.C.
and the victim, J.M., resided in the same foster home in Midland in March
2009.  M.A.C. was thirteen years old at the time, and J.M. was nine years old. 
One of the juveniles’ foster parents, Austin Harris, testified that he and the
youth in the foster home watched a movie in the main living area of the home on
the evening of March 14, 2009.  After the movie ended, he told all of the
children that they needed to go to their respective bedrooms and get ready for
bed.  After a momentary absence, Mr. Harris returned to the main living area to
adjust the thermostat for the home.  He found M.A.C. and J.M. in the main
living area with the lights turned off.  J.M. said that she and M.A.C. were
“just talking”; M.A.C. told Mr. Harris that he was looking for a pencil.  

Mr.
Harris reported his discovery to his wife, Linea Harris.  Based on their
suspicions, Mrs. Harris decided to question J.M. about the incident.  She and
Mr. Harris also questioned M.A.C. about the incident.  M.A.C. told them that he
had done “something very bad” in that he had touched J.M.’s breasts over her
clothes.  Mr. and Mrs. Harris subsequently reported the incident to their
supervisors.  Alexandra Arredondo, a former foster care case manager for the
Buckner Home, testified that M.A.C. told her that he and J.M. touched each
other under their shirts and that they were “humping” with their clothes on.

Andra
K. Chamberlin, a forensic interviewer with the Midland Rape Crisis and
Children’s Advocacy Center, subsequently interviewed J.M.  She testified that
J.M. told her about three different incidents that had occurred with M.A.C.  They
included:  (1) “humping” over clothes; (2) M.A.C. sucking on J.M.’s breasts and
M.A.C. engaging in sexual intercourse with J.M.; and (3) another incident of
“humping” over clothes when they were interrupted by Mr. Harris.

Detective
Charles Sims of the Midland Police Department met with M.A.C. after Chamberlin
interviewed J.M.  Detective Sims subsequently transported M.A.C. to meet with Honorable
Joe L. Matlock, Justice of the Peace, for the administration of magistrate
warnings for the purpose of obtaining a recorded statement from M.A.C.  Judge
Matlock testified that Detective Sims was present when he administered the
magistrate warnings to M.A.C. and that Detective Sims remained present during
the time that Judge Matlock subsequently asked M.A.C. questions pertaining to
the voluntariness of his statement.[2] 
Judge Matlock testified that he requested Detective Sims to remain present
during the entire warning and interview process.  Furthermore, Detective Sims
testified that he was armed during this process and that his firearm was visible
at all times.

In
the recorded statement, M.A.C. admitted that three incidents occurred with
J.M.  He stated that the first incident involved him accidently touching J.M. 
The second incident involved him touching and sucking J.M.’s breasts.  He also
stated that J.M. asked to see his penis and that he showed it to her, after
which they engaged in skin-to-skin contact.  He initially denied that any
penetration occurred during this episode, but then he later stated that
penetration may have occurred for thirty seconds.[3] 
The third incident he related pertained to the time that Mr. Harris caught him
and J.M. in the main living area.

Admissibility
of Recorded Statement

M.A.C.
asserts in his first issue that the trial court erred in admitting his recorded
statement into evidence.  He contends that it was illegally obtained in
violation of Tex. Fam. Code Ann. § 51.095
(Vernon 2008).   We note at the outset of our analysis that M.A.C. is
not asserting that his statement was involuntary.  See Martinez v. State, 131 S.W.3d 22, 35 (Tex. App.—San Antonio 2003, no pet.) (Due process
may be violated by the admission of a confession that was not voluntarily
given.).  Instead, he contends that officials violated the procedural
requirements of Section 51.095(a)(1)(B)(i).  

We review a trial court’s ruling on a motion to suppress the
statement of a juvenile in an adjudication proceeding under the same abuse of
discretion standard as a motion to suppress the statement of an adult in a
criminal proceeding.  See Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim.
App. 2002); In re J.A.B., 281 S.W.3d 62, 65 (Tex. App.—El Paso 2008, no
pet.).  When reviewing the trial court’s ruling on a motion to suppress, we
view the evidence in the light most favorable to the trial court’s ruling.  State
v. Iduarte, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); In re J.A.B.,
281 S.W.3d at 65.  We uphold the trial court’s ruling if it is supported by the
record and correct under any theory of law applicable to the case. Iduarte,
268 S.W.3d at 548; In re J.A.B., 281 S.W.3d at 65.  We give almost
total deference to the trial court’s rulings on questions of historical fact
and application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652-53 (Tex.
Crim. App. 2002); Best v. State, 118 S.W.3d 857, 861-62 (Tex. App.—Fort
Worth 2003, no pet.).  However, we review de novo a trial court’s rulings on
application-of-law-to-fact questions that do not turn on the credibility and
demeanor of witnesses.  Johnson, 68 S.W.3d at 652-53.

            M.A.C.
contends that the provisions of Section 51.095(a)(1)(B)(i) were violated
because Detective Sims was present during the entire warning and interview
process and was armed during this process with his firearm visible at all
times.  Given Judge Matlock’s testimony that he requested the presence of Detective
Sims, we focus our attention to the presence of Detective Sims’s weapon
during the interview process.  The critical inquiry is whether or not the
weapon prohibition applied to the taking of M.A.C.’s recorded statement.

The
State asserted at trial that the weapon prohibition of Section 51.095(a)(1)(B)(i)
did not apply because M.A.C.’s statement was not the result of a custodial
interrogation.[4] 
Section 51.095(a)(1), (b)(1), (d); see Martinez, 131 S.W.3d at 32.  The State asserts a different legal theory on appeal for upholding
the trial court’s admission of M.A.C.’s statement.  Specifically, the State
contends that the weapon prohibition set out in Section 51.095(a)(1)(B)(i) is
inapplicable to M.A.C.’s statement because he gave a recorded statement
pursuant to section 51.095(a)(5).  We agree.  As previously noted, we are
required to uphold the trial court’s ruling if it is correct under any theory
of law applicable to the case.  Iduarte, 268 S.W.3d at 548; In re J.A.B.,
281 S.W.3d at 65.

Subsection
(a) of Section 51.095 consists of five subparts, each of which applies to a
particular type of statement that a juvenile may make:  subpart (a)(1) applies
to written statements; subpart (a)(2) applies to oral statements evidencing the
child’s guilt; subpart (a)(3) applies to res gestae statements; subpart (a)(4)
applies to statements made in court proceedings; and subpart (a)(5) applies to
statements recorded by an electronic recording device.  We focus our attention on
subparts (a)(1) (written statements) and (a)(5) (recorded statements).  Subpart (a)(1)
is of interest because the weapon prohibition is found under this subpart. 
Subpart (a)(5) is of interest because M.A.C. gave a recorded statement.  

            The
provisions for written statements contained in subpart (a)(1) contemplate two
periods during which the magistrate will interact with the juvenile.  Subpart (a)(1)(A)(i)-(iv)
sets out four warnings that the magistrate must give the juvenile prior to the
juvenile giving the written statement.  The provisions of subpart (a)(1)(B)(i)
set out the procedures that the magistrate must follow to assess the
voluntariness of the juvenile’s written statement after its preparation.  Specifically,
subpart (a)(1)(B)(i) provides:

[T]he statement must
be signed in the presence of a magistrate by the child with no law enforcement
officer or prosecuting attorney present, except that a magistrate may require a
bailiff or a law enforcement officer if a bailiff is not available to be present
if the magistrate determines that the presence of the bailiff or law
enforcement officer is necessary for the personal safety of the magistrate or
other court personnel, provided that the bailiff or law enforcement officer may
not carry a weapon in the presence of the child.  

 

Thus, by its
express terms, the weapon prohibition applies when the juvenile executes a
written statement in the presence of a magistrate.

            The
procedures for obtaining a recorded statement from a juvenile are similar to
those applicable to obtaining a written statement.  They are similar in the
respect that subpart (a)(5)(A) requires a magistrate to give the juvenile the
same warnings set out in subpart (a)(1)(A) for written statements.  However,
the statute provides a different follow-up procedure for recorded statements. The
applicable follow-up procedure for a recorded statement is set out in
subsection (f):   

            A
magistrate who provides the warnings required by Subsection (a)(5) for a
recorded statement may at the time the warnings are provided request by
speaking on the recording that the officer return the child and the recording
to the magistrate at the conclusion of the process of questioning.  The
magistrate may then view the recording with the child or have the child view
the recording to enable the magistrate to determine whether the child’s
statements were given voluntarily.  The magistrate’s determination of
voluntariness shall be reduced to writing and signed and dated by the
magistrate.  If a magistrate uses the procedure described by this subsection, a
child’s statement is not admissible unless the magistrate determines that the
statement was given voluntarily.

 

As reflected
above, the follow-up procedure set out in subsection (f) for recorded
statements is discretionary.  Furthermore, it does not contain the weapon
prohibition found in subpart (a)(1)(B)(i) for written statements.  Accordingly,
the trial court did not err in allowing M.A.C.’s recorded statement to be
admitted despite the fact that Detective Sims’s firearm was visible. 
Appellant’s first issue is overruled.

Admissibility of Outcry Testimony

In
his second issue, M.A.C. challenges the admissibility of Chamberlin’s outcry
testimony on the contention that she was not the first person, eighteen years of age or older, to whom J.M. made a statement about the alleged violations of
the Penal Code as required by Tex. Fam.
Code Ann. 54.031(b)(2) (Vernon Supp. 2010).  In this regard, M.A.C.
points out that J.M. made reports to her foster parents, Arredondo, and
Margaret Gray of Buckner Children and Family Services before speaking with
Chamberlin. 

The outcry statute found in Section 54.031 is to be interpreted and applied in a
juvenile trial in the same manner as the parallel rule in the Code of Criminal
Procedure is applied in an adult criminal trial.  In re Z.L.B., 102
S.W.3d 120, 123 (Tex. 2003); In re J.G., 195 S.W.3d 161, 169 (Tex. App.—San
Antonio 2006, no pet.).  The trial court has broad discretion in considering
whether a child’s statement falls within the hearsay exception provided by Section
54.031, and the trial court’s exercise of that discretion will not be disturbed
on appeal unless a clear abuse of discretion is established by the record.  In
re J.G., 195 S.W.3d at 169; Chapman v. State, 150 S.W.3d 809, 813
(Tex. App.—Houston [14th Dist.] 2004, pet. ref’d) (The trial court has broad discretion in determining who the proper outcry witness is.).

An outcry witness is not person-specific but event-specific.  In re J.G., 195
S.W.3d at 169; Broderick v. State, 35 S.W.3d 67, 73 (Tex. App.—Texarkana
2000, pet. ref’d).  The proper outcry witness to a single event is the first
adult person other than the defendant to whom the victim made a statement
describing the violation in question.  In re J.G., 195 S.W.3d at 169-70;
Broderick, 35 S.W.3d at 73-74.  The statement must be one that in some
discernible manner describes the alleged offense; it must be more than just
words generally alluding that something in the area of child abuse was going
on. In re Z.L.B., 102 S.W.3d at 122; In re J.G., 195
S.W.3d at 170; see Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim.
App. 1990).  When a child discloses a general allusion of abuse to an adult,
rather than a clear description of the event, that adult is not the proper
outcry witness.  In re Z.L.B., 102 S.W.3d at 122; In re J.G., 195
S.W.3d at 170.

In
its petition for delinquency trial, the State alleged that M.A.C. engaged in
delinquent conduct by violating two felony penal laws.  Specifically, the State
alleged that M.A.C. engaged in sexual contact with J.M. by touching her breast
with the intent to arouse and gratify his sexual desire.  See Tex. Penal Code Ann. § 21.11 (Vernon Supp.
2010).  The State also alleged that M.A.C. intentionally and knowingly caused
the penetration of the female sexual organ of J.M. with his sexual organ.  See
Tex. Penal Code Ann. § 22.021
(Vernon Supp. 2010).  As noted previously, Chamberlin offered outcry testimony pertaining
to these allegations.  Our analysis focuses on whether or not J.M. reported
these specific allegations to the foster parents, Arredondo, or Gray before
disclosing them to Chamberlin.  

Neither
the foster parents nor Arredondo testified in detail about the matters that
J.M. disclosed to them.  However, representatives of Buckner Children and
Family Services prepared an incident report.  The trial court admitted the
incident report into evidence at M.A.C.’s request.  Gray stated in the report
that J.M. told Mrs. Harris that M.A.C. “touched her between her legs and he
humped her for a second.”  Gray also stated in the report that J.M. told her
and Arredondo that she and M.A.C. “had been wrestling and he picked her up and
took her into the living area and began to hump her.”  Gray also reported that
J.M. told them that M.A.C. “touched her under her clothes and that he had poked
her hard.”  Lastly, Gray stated in the report that J.M. told them that M.A.C.
“picked up her shirt and tried to bite her (and pointed to her breast.)”

As
set forth above, the State alleged that M.A.C. engaged in sexual contact with
J.M. by touching her breast and by penetrating her female sexual organ with his
sexual organ.  The statements from J.M. contained in Gray’s report do not reach
the level of the alleged violations.  The statements pertaining to humping and
poking are too general to address the allegation of penetration.  In this
regard, Chamberlin testified that J.M. described “humping” as “lay[ing] on top
of each other [and moving].”  With regard to the allegation of M.A.C. touching
J.M.’s breast, J.M.’s statement to Gray and Arredondo was only that M.A.C. “tried
to bite [her breast.]”  In the absence of more specific statements pertaining
to the alleged violations, we conclude that the trial court did not abuse its
discretion in determining that Chamberlin was the proper outcry witness. 
Appellant’s second issue is overruled.

This
Court’s Ruling

             The
judgment of the juvenile court is affirmed.

 

            

                                                                                    TERRY
McCALL

                                                                                    JUSTICE

 

April 14, 2011

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]The county court at law sat as a juvenile court.






                [2]It also appears that Judge Matlock remained present
during the time that M.A.C. gave his oral statement to Detective Sims. 





                [3]J.M. testified at trial that M.A.C.  penetrated her
female sexual organ with his penis.





                [4]We express no opinion with regard to the State’s
contention that M.A.C.’s statement was not the result of a custodial
interrogation.