

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-10-00421-CV

## IN THE MATTER OF C.M., A JUVENILE

_____

**From the 272nd District Court
Brazos County, Texas
Trial Court No. 73-J-2010**

## MEMORANDUM  OPINION

C.M. appeals from the trial court's denial of a motion to suppress three statements he made to law enforcement officials relating to an aggravated robbery. After the trial court's denial of his motion to suppress, C.M. pled true and was found to have engaged in delinquent conduct for an aggravated robbery and possession of a prohibited weapon.  TEX. FAM. CODE ANN. §§ 54.03; 56.01(n)(2) (West 2008).  C.M. complains that the trial court erred by denying his motion to suppress his first two statements because they were the result of custodial interrogation and therefore, the failure of the officers to comply with the 5th and 14th Amendments to the United States Constitution, Article 1, Sections 9 and 10 of the Texas Constitution, and section 51.095 of the Texas Family Code.  C.M. further complains that his third statement should have

been suppressed because section 52.025 was violated in that his custodians were not allowed to speak to him prior to his making the statement and because he did not affirmatively waive his rights as required by section 51.095 (a)(5)(A). TEX. FAM. CODE ANN. § 51.095 (a)(5)(A) (West 2008). Because we find that the trial court did not abuse its discretion by denying the motion to suppress, we affirm.

*Standard of Review*

We review a trial court's ruling on a motion to suppress the statement of a juvenile in an adjudication proceeding under the same abuse of discretion standard as a motion to suppress the statement of an adult in a criminal proceeding. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *In re J.A.B.*, 281 S.W.3d 62, 65 (Tex. App.—El Paso 2008, no pet.). When reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *In re J.A.B.*, 281 S.W.3d at 65. We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *Iduarte*, 268 S.W.3d at 548; *In re J.A.B.*, 281 S.W.3d at 65. We give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *Best v. State*, 118 S.W.3d 857, 861-62 (Tex. App.—Fort Worth 2003, no pet.). However, we

review *de novo* a trial court's rulings on application-of-law-to-fact questions that do not turn on the credibility and demeanor of witnesses. *Johnson*, 68 S.W.3d at 652-53.

*The Facts*

An armed robbery of a convenience store committed with a shotgun took place a short distance from the place C.M. was residing with his cousin, Charles, and Charles's wife, Laura. At this time, C.M. was fifteen years old. Shortly after the robbery, a neighbor called the police to report a suspicious person attempting to enter Charles and Laura's residence through the back door. Multiple officers had been dispatched to the scene to attempt to locate the robber, some of whom were in uniform and some were not. An officer came to the residence and asked to search the residence because of the neighbor's report to make sure that no one had broken into the residence. Laura was the only person at home and gave consent.

At one point during the search for the robber, a suspect was spotted and chased, but that person escaped. A short time later, an officer spotted C.M. in an alley a short distance away peering around a corner of a building. When he saw an officer and a deputy constable, C.M. turned and tried to walk away. The officers took off running after C.M. and told him to stop, which he did. C.M. was frisked for weapons and walked back with the officers to the residence.

At the residence, C.M. was told not to leave and to wait next to Charles's vehicle. C.M. sat down on the back of Charles's truck and waited. Hines, a detective, and at

least one other officer stood with C.M. and had a conversation with C.M. about what he had been doing that day and why he was not in school. During this time other officers were in the vicinity of C.M. and were armed, although the officers testified that no weapon was pointed at C.M. at any time and the weapons were unholstered only during the protective sweep of the residence. Additionally, some of the officers at the scene carried patrol rifles but the officers testified that they were pointed at the ground in a safety circle position and not at C.M. While sitting on Charles's truck, the officers observed that C.M. seemed to be very nervous and shaking. He was dressed in a t-shirt and shorts, which the officers believed was odd for the weather that day, which was cool. C.M. was not handcuffed at any time prior to the conclusion of the second statement made in the patrol car.

C.M.'s initial story regarding his whereabouts that day were shown to be untrue, and after a short conversation of approximately five to ten minutes, Hines confronted C.M. by telling him that they knew what had happened that morning and that C.M. might as well be truthful with the officers. At this point, C.M. admitted that he had robbed a store with a shotgun. He had stolen a shotgun from a friend in Dallas and had hidden it under his bed wrapped in a towel. C.M. committed the robbery so he could get the money to return to Dallas, his hometown. C.M. contended that he had thrown down the money and shotgun while he was being chased. This is the first statement of which C.M. complains.

Hines then took C.M. to an unmarked police car so they could discuss what had happened in a quieter environment. Hines got into the driver's side and C.M. got into the passenger side front seat. Another officer had already activated a recording device in the vehicle. Hines asked C.M. similar questions except in more detail and C.M. again confessed to stealing the shotgun and committing the robbery with the shotgun that was loaded. C.M. stated that if the store clerk had resisted that he would have shot the clerk. C.M. did not seem overly nervous or upset during this interview but was calm and matter-of-fact. After this discussion, Hines told C.M. that he was under arrest and that he would be taken to juvenile detention. This was the second statement of which C.M. complains. C.M. was then left in the vehicle for a short time when another officer came and asked him to exit the vehicle, at which time he was then handcuffed.

Multiple officers spoke with Charles and Laura during this time. Laura consented to a search of C.M.'s room and the residence. Charles and Laura both testified that they asked to speak to C.M., but were not allowed to do so. Both stated that if they had been allowed to speak to C.M. they would have advised him against making any statements until after speaking with an attorney and that they believed that C.M. would have listened to their advice. Charles asked to accompany C.M. to the police station but the officers told him no and that he could not speak with C.M. until he was taken to juvenile detention. C.M. did not have any prior adjudications as a

juvenile; however, Charles testified that C.M. had been in trouble before but had not been caught when he lived in Dallas.

C.M. was taken to the Bryan Police Department to see a magistrate. C.M. was in an interview room for approximately an hour waiting for the magistrate to arrive. There is no dispute that C.M. was in custody at this time. Gore, a magistrate, arrived and met with C.M. in the interview room. She reviewed the required warnings and advised C.M. of his rights as required by section 51.095(a)(5)(A) of the Family Code. C.M. signed an acknowledgment that he had been read and had his rights explained to him by the magistrate, that he understood them, and had asked any questions he had regarding them. This was electronically recorded both visually and aurally. The magistrate asked C.M. if he still wanted to talk with the detectives and C.M. responded affirmatively. Gore also testified at the suppression hearing that she believed that C.M. understood his rights and that he voluntarily wanted to speak with the officers. C.M. was interviewed by Hines and another detective and made a statement similar to the statement recorded in the police vehicle. This statement by C.M. is the third statement of which C.M. complains.

C.M. filed a motion to suppress each of these statements, which was denied after a hearing by the trial court. C.M. did not testify at the suppression hearing. After the motion was denied, C.M. pled true to the offenses of aggravated robbery and possession of a prohibited weapon, a sawed-off shotgun. In the disposition phase, the

trial court accepted the disposition of a determinate sentence of fifteen years' confinement to be served in the custody of the Texas Youth Commission for the aggravated robbery which had been agreed-upon by the State and C.M.

## CUSTODY

In determining whether or not the statements should have been suppressed, the initial inquiry is at what time C.M. was in custody of the police because the protections of the 5th and 14th Amendments of the United States Constitution, article 1, sections 9 and 10 of the Texas Constitution, and relevant sections of the Family Code concerning the admissibility of statements of a juvenile do not apply if the juvenile is not in custody when the statement was made.[1] *See* TEX. FAM. CODE ANN. § 51.095(d); *Roquemore v. State*, 60 S.W.3d 862, 866 (Tex. Crim. App. 2001).

Custodial interrogation is questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom in any significant way. *See Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528-30, 128 L. Ed. 2d 293 (1994); *Cannon v. State*, 691 S.W.2d 664, 671 (Tex Crim. App. 1985); *Martinez v. State*, 131 S.W.3d 22, 32 (Tex. App.—San Antonio 2003, no pet.). "A custodial interrogation occurs when a defendant is in custody and is exposed 'to any

---

[1] Although C.M. complains that the statements were made in violation of the Texas Constitution, he makes no further arguments regarding what protections the Texas Constitution provides that differ from those of the United States Constitution; therefore we will not address that portion of his issue. *See* TEX. R. APP. P. 38.1(i); *see also Johnson v. State*, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992) (declining to address appellant's arguments regarding his state constitutional rights when the appellant did not make a distinction between the United States Constitution and the Texas Constitution).

words or actions on the part of the police . . . that [the police] should know are reasonably likely to elicit an incriminating response.'" *Roquemore v. State*, 60 S.W.3d at 868 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980)). A child is in custody if, under the objective circumstances, a reasonable child of the same age would believe his freedom of movement was significantly restricted. *In re U.G.*, 128 S.W.3d 797, 799 (Tex. App.—Corpus Christi 2004, pet. denied); *Jeffley v State*, 38 S.W.3d 847, 855 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

We employ a two-step analysis in a juvenile delinquency proceeding to determine whether a child is in custody. *In re M.R.R.*, 2 S.W.3d 319, 323 (Tex. App.—San Antonio 1999, no pet.). First, we examine all the circumstances surrounding the interrogation in order to determine whether there was a formal arrest or restraint of freedom of movement to the degree associated with a formal arrest. *Stansbury*, 511 U.S. at 322, 114 S. Ct. at 1528-29; *In re M.R.R.*, 2 S.W.3d at 323. This initial determination focuses on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the child being questioned. *Stansbury*, 511 U.S. at 322, 114 S. Ct. at 1529; *In re M.R.R.*, 2 S.W.3d at 323. Second, we consider whether a reasonable child would have felt he or she was at liberty to terminate the interrogation and leave in light of the given circumstances. *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct 457, 465, 133 L. Ed. 2d 383 (1995); *In re M.R.R.*, 2 S.W.3d at 323.

The four factors relevant to a determination of custody include (1) probable cause to arrest; (2) focus of the investigation; (3) subjective intent of the police; and (4) subjective belief of the defendant. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *In re J.A.B.*, 281 S.W. 3d at 65; *In re M.R.R.*, 2 S.W.3d at 323. Because the determination of custody is based on primarily objective circumstances, whether the law enforcement officials had the subjective intent to arrest is irrelevant unless that intent is somehow communicated to the suspect. *Stansbury*, 511 U.S. at 323, 114 S. Ct. at 1529; *Dowthitt*, 931 S.W.2d at 254; *Jeffley*, 38 S.W.3d at 855; *In re M.R.R.*, 2 S.W.3d at 323.

The following situations generally constitute custody: (1) when the child is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the child that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; or (4) when there is probable cause to arrest and law enforcement officers do not tell the child that he is free to leave. *Dowthitt*, 931 S.W.2d at 255; *Jeffley*, 38 S.W.3d at 855.

However, merely being the focus of an investigation does not amount to being in custody. *Meek v. State*, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990); *Martinez*, 131 S.W.3d at 32. "Words or actions by the police that normally attend an arrest and custody, such as informing a defendant of his *Miranda* rights, do not constitute a custodial interrogation." *Roquemore*, 60 S.W.3d at 868. When the circumstances show that the

individual acts upon the invitation or request of the police and there are no threats, express or implied, that he will be forcibly taken, then that person is not in custody at that time. *Dancy v. State*, 728 S. W.2d 772, 778-79 (Tex. Crim. App. 1987); *Martinez*, 131 S.W.3d at 32.

"The mere fact that an interrogation begins as non-custodial, however, does not prevent it from later becoming custodial; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation." *Dowthitt*, 931 S.W.2d at 255; *Jeffley*, 38 S.W.3d at 856.

*First Statement*

C.M. complains that he was in custody at the time he made the first statement to Hines while he was sitting on the back of Charles's truck. Although the officer who initiated contact with C.M. and brought him back to the residence told him he could not leave, no other indicia of an arrest were present. C.M. was not handcuffed or otherwise restrained, nor did the officers make any threats that he would be forcibly taken if he attempted to leave. At that time, C.M. was at most a suspect but there was no probable cause to believe that he had committed the robbery. The shotgun and money from the robbery were found under Charles's porch stairs after C.M. had made his first two incriminating statements but not because of C.M.'s statements. C.M. stated that he had thrown them away while hiding from the police. There was no other evidence regarding whether C.M. subjectively felt he was in custody or not. Viewing the

evidence in the light most favorable to the trial court's ruling, we find that C.M. was not restrained to the degree associated with a formal arrest. He was not in custody and therefore, the officers were not required to give the required warnings and admonishments. The trial court did not abuse its discretion in denying the motion to suppress the first statement made by C.M.

*Second Statement*

Hines testified that because of the noise and activity at the residence that he took C.M. to an unmarked police vehicle so that he could speak with him with fewer distractions. Hines testified that he told C.M. on the way to the vehicle that he was not under arrest. C.M. willingly followed Hines to the vehicle and got in the passenger side front seat to speak with Hines. The audio recording demonstrates that C.M. was calm and apparently wanted to tell his story to Hines. There were no threats or other statements that indicated that C.M. was not free to leave or was forced to make the statement on the audio recording. After the statement was given, Hines told C.M. at that time that he was under arrest. During the time of the making of this statement, the only other evidence connecting C.M. to the robbery was a resemblance between C.M. and the individual shown on the video recording of the robbery from the convenience store. There was no other evidence regarding C.M.'s subjective beliefs regarding whether he was in custody or free to leave when he made the second statement. Viewing the evidence in the light most favorable to the trial court's ruling and giving

deference to the trial court's determinations of fact, we find that C.M. was not in custody until after he made the second statement. The trial court did not abuse its discretion by denying the motion to suppress the second statement because C.M. was not in custody when the statement was made. We overrule issue one.

## PRESENCE OF CUSTODIANS

In his second issue, C.M. complains that the trial court abused its discretion by denying his motion to suppress his third statement made at the police department because Charles and Laura were not allowed to speak to him prior to his making the statement nor were they allowed to accompany C.M. to the police department. Rather, they were affirmatively told that they could not speak with C.M. or accompany him when they asked the officers, which C.M. contends is a violation of section 52.025(c) of the Family Code, which states that "[a] child … is entitled to be accompanied by the child's parent, guardian, or other custodian or by the child's attorney." TEX. FAM. CODE ANN. § 52.025(c) (West 2008). However, there is no requirement that such a person be present. *See Cortez v. State*, 240 S.W.3d 372, 380 (Tex. App.—Austin 2007, no pet.).

The burden of proof is on the child to establish a causal connection between a statutory violation of section 52.025 and his statement. *See Gonzales v. State*, 67 S.W.3d 910, 913 (Tex. Crim. App. 2002) (holding that suppression required only when there is causal connection between violation of parental notice requirement and receipt of juvenile's statement). While the issue in *Gonzales* involved a violation of section 52.02(b)

relating to prompt parental notification, the same causal connection is required to render a statement inadmissible for a statutory violation of section 52.025(c). *See Cortez*, 240 S.W.3d at 380-81.

Charles and Laura testified that if they had been able to speak with C.M. they would have advised him not to make any statements prior to him speaking with an attorney. Charles opined that C.M. would have heeded his advice because Charles had been in trouble with the law previously. However, when later recalled as a witness, Charles stated that he was unsure whether C.M. would have listened to his advice or not.

On the recording of C.M. at the police department, C.M. never requested the presence of Charles or Laura. C.M. had admitted that he committed the robbery because he was trying to get away from their residence because he was not happy there. C.M. is a distant cousin of Charles and had resided with Charles and Laura only for approximately two months prior to the robbery. Prior to that, he had lived in Dallas his entire life. In fact, when Charles reminded C.M. of his doctor's appointment scheduled that day, C.M. told Charles that he would not go, which could be construed as evidence of C.M.'s refusal to act in accordance with Charles's directions. Even if we assume without deciding that section 52.025(c) was violated, when viewing the evidence in a light most favorable to the trial court's decision, C.M. did not establish a causal

connection between the alleged violation and his third statement.  We overrule issue two.

## WAIVER OF RIGHTS

In his third issue, C.M. argues that the third statement should have been suppressed because he did not affirmatively waive each of the rights set forth in section 51.095(a)(1)(A) and therefore the statement was not made in compliance with section 51.095(a)(5).

*Relevant Statutes*

Section 51.095(a)(5)(A) of the Family Code provides the statement of a child made while in custody is admissible if:

> (5) the statement is made orally under circumstances described by Subsection (d) and the statement is recorded by an electronic recording device, including a device that records images, and:
> (A) before making the statement, the child is given the warning described by Subdivision (1)(A) by a magistrate, the warning is a part of the recording, and the child knowingly, intelligently, and voluntarily waives each right stated in the warning.

TEX. FAM. CODE ANN. § 51.095(a)(5)(A) (West 2008).  The warnings required to be given by section 51.095(a)(1)(A) are as follows:

> (i)    the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;
> (ii)   the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;
> (iii)  if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child before or

during any interviews with peace officers or attorneys representing the state; and

(iv) the child has the right to terminate the interview at any time.

TEX. FAM. CODE ANN. § 51.095(a)(1)(A) (West 2008).

Article 38.22, section 3(a) of the Texas Code of Criminal Procedure provides that no oral statement of an accused shall be admissible unless:

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning.

TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005).

*Analysis*

The language in section 51.095 of the Family Code is substantially the same as that contained in article 38.22 of the Code of Criminal Procedure with the exception that the Family Code requires that a magistrate administer the warnings to the child. The Court of Criminal Appeals has determined that article 38.22 does not require an express waiver of rights. *Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000). Additionally, this Court has previously held that there is no requirement that a juvenile explicitly waive his rights pursuant to section 51.095 of the Family Code or article 38.22 of the Code of Criminal Procedure. *See In re J.L.*, No. 10-06-00246-CV, 2007 Tex. App. LEXIS 8909 at *13 (Tex. App.—Waco Nov. 7, 2007, no pet.) (mem. op.). Rather, an implicit waiver can be inferred from the actions and words of the person being interrogated. *See Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010) (*quoting North Carolina v. Butler*,

441 U.S. 369, 373, 99 S. Ct. 1755, 1760, 60 L. Ed. 2d 286 (1979)); *see also Marsh v. State*, 140

S.W.3d 901, 911 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (*construing* TEX. FAM.

CODE ANN. § 51.095 consistently with TEX. CODE CRIM. PROC. ANN. art. 38.22).

As shown on the video recording of the third statement, C.M. was read the

required warnings by the magistrate. During that meeting with the magistrate, C.M.

indicated he understood his rights, including his right to have an attorney present and

to terminate the interview at any time. C.M. stated he understood those rights and

answered affirmatively when the magistrate asked him if he still wanted to talk with

the detectives. Following this, appellant proceeded to give his statement to the

detectives. Based on this implied waiver, the trial court's denial of the motion to

suppress because C.M. knowingly and intelligently waived his rights is supported by

sufficient evidence. C.M.'s third issue is overruled.

*Conclusion*

Having found no error in the trial court's denial of the motion to suppress the

statements, we affirm the trial court's orders of adjudication and disposition.


TOM GRAY
Chief Justice


Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed February 22, 2012
[CV06]